**ATTACHMENT 5**



# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

June 6, 2012

T. Christian Herren
United States Department of Justice
Civil Rights Division
Voting Section – NWB
950 Pennsylvania Ave, NW
Washington, D.C. 20530

Re: Florida's Continuing Commitment to Protecting Citizen Voting Rights

Dear Mr. Herren:

I write in response to your letter of May 31, 2012, which questions the Florida Department of State's ongoing efforts to protect the integrity of elections and to maintain current and accurate voter registration rolls. Your letter suggests that the Department of Justice (DOJ) opposes these efforts, and reads federal law to prohibit Florida from verifying the eligibility of registered voters and removing non-citizens from its voter rolls. The Department of State respectfully disagrees with DOJ's position. The actions taken by Florida to identify and remove non-citizens from its voter rolls ensure that the right to vote of citizens is protected and is not diluted by the votes of ineligible persons.

For nine months, Florida has sought access to the best available information to ensure the accuracy of our voter registration rolls: the Systematic Alien Verification for Entitlements (SAVE) database maintained by the Department of Homeland Security (DHS). Because DHS has repeatedly blocked Florida's access, we have been unable to send additional information to supervisors of elections since April 30, 2012. We continue to wait for access to the most current information available, and we respectfully reiterate our request for immediate access to the SAVE database.

At the outset, it is important to note that the process initiated by the Florida Department of State has identified registered voters who, by their own admission, are not United States citizens. These ineligible persons have been appropriately removed from the voter rolls. Pursuant to Florida law, **no person has been or will be removed from the voter rolls without the fundamentals of due process**: notice, an opportunity to be heard, and a determination by the county supervisor of elections that a preponderance of the evidence shows the voter is ineligible.



R. A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399-0250
Telephone: (850) 245-6500 • Facsimile: (850) 245-6125  www.dos.state.fl.us
*Commemorating 500 years of Florida history*   www.fla500.com



Under section 98.075, Florida Statutes, a law which has been duly precleared by the Department of Justice, a supervisor of elections must take the following actions before any person's name may be removed from the statewide voter registration system:

- Notify the registered voter of his or her potential ineligibility by certified mail, return receipt requested, including any documentation upon which the potential ineligibility is based;
- Allow the registered voter 30 days to respond by admitting or denying the accuracy of the information underlying the potential ineligibility;
- Provide the registered voter a hearing, if requested, for the purpose of determining eligibility;
- If the mailed notice is returned as undeliverable, publish notice in a newspaper of general circulation in the county where the voter was last registered, with an additional 30-day opportunity for the registered voter to resolve the matter;
- At the conclusion of the notice and hearing process, make a final determination of the voter's eligibility based on a preponderance of the evidence before the supervisor of elections;
- Allow for an additional appeal of any determination of ineligibility before a state circuit court.

Other duly-precleared Florida laws provide additional safeguards to protect the rights of lawfully registered voters. *See* § 98.081(2), Fla. Stat. (providing for restoration of any voter erroneously removed from the statewide voter registration system); § 101.048, Fla. Stat. (allowing any voter whose eligibility cannot be determined to vote a provisional ballot).

As explained below, Florida's implementation of these state statutes is fully consistent with federal law.

## The Voting Rights Act

Florida's actions are consistent with the Voting Rights Act. The State of Florida is not a covered jurisdiction subject to the preclearance requirements of Section 5 of the Voting Rights Act. As for the role of the supervisors of elections in Florida's five covered counties, they are simply administering a law that the Department of Justice has duly precleared. *See* § 98.075, Fla. Stat.

## The National Voter Registration Act

Florida's actions are also consistent with the National Voter Registration Act. DOJ's reading of the NVRA would grant *greater* protection against removal from the voter rolls to non-citizens—who were never eligible to vote—than to other categories of registered voters (such as deceased persons, convicted felons, and the mentally incompetent) who may have lawfully been on the rolls at one time but have later *become* ineligible. Such a result is plainly contrary to the NVRA's express purpose of "ensur[ing] that accurate and current voter registration rolls are maintained." 42 U.S.C. § 1973gg(b)(4).

If the effect of the NVRA is to force a state to allow never-eligible non-citizens the opportunity to vote, then the statute might violate the Equal Protection Clause of the Constitution, which guarantees that the right to vote cannot be denied by a dilution of the weight of a citizen's vote. If DOJ applies the NVRA in this manner, then presumably eligible voters in Florida have the right to bring a lawsuit in federal court to test whether their votes are being unconstitutionally denied by the federal government.

Your letter suggests that Florida's efforts to identify and remove non-citizens who have illegally registered to vote violate the NVRA because we are now within ninety days of a federal election. Even if the ninety-day provision were read to provide for this result—that is, prohibiting a state from removing non-citizens from the voter rolls three months prior to a federal election—nothing in the NVRA would prohibit Florida from simply gathering information about persons who have illegally registered. That information, even if not used to remove improperly-registered persons now, could be used after a federal election to remove those persons from the rolls or to prosecute them if they illegally voted.

Finally, even assuming the NVRA's ninety-day provision applies to the type of individualized assessment at issue here, Florida has entered that period only because DHS has repeatedly ignored or rebuffed Florida's efforts to gain access to the SAVE database—access that was necessary for successful and accurate completion of Florida's efforts to ensure the integrity of its voter registration rolls. For your reference, I have attached to this letter a chain of emails dating back *nine months*, which demonstrates DHS's refusals and delays in this regard.

By denying Florida access to the SAVE database, DHS appears to have violated federal law, which provides that states may use the SAVE database "for any legal purpose such as . . . voter registration," and that DHS "shall respond to an inquiry by a . . . State . . . government agency . . . seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."  76 Fed. Reg. 58525, 58527 (Sept. 21, 2011); 7 U.S.C. § 1373(d).

**In sum, the practice DOJ now appears to be endorsing is as follows: the federal Department of Homeland Security may, for months, violate federal law and deny Florida and other states access to the SAVE database so that the federal Department of Justice may then assert that the resulting delays in a state's election-integrity efforts violate the time periods established in another federal law. This hardly seems like an approach earnestly designed to protect the integrity of elections and to ensure that *eligible* voters have their votes counted.**

## Conclusion

It is an unfortunate but now undeniable fact that Florida's voter rolls include individuals who are not citizens of the United States. The Florida Department of State has a solemn obligation to ensure the integrity of elections in this State. Permitting ineligible, non-citizen voters to cast ballots undermines that mission and erodes the justified faith the electorate has in the fairness and reliability of the electoral process. To enable the Department of State to meet its

responsibility to enforce both federal and state law, and to determine what further action may be necessary, please provide us with answers to the following questions by June 11:

(1) Does the DOJ agree that the Department of Homeland Security has a legal obligation to provide Florida access to the SAVE database?

(2) Is it the DOJ's position that the NVRA prohibits any actions by Florida to identify and remove non-citizens from its voter registration rolls between today's date and the date of the November 6 General Election?

(3) If not, what steps does the DOJ believe Florida may take to identify and remove non-citizens from its voter registration rolls between today's date and the date of the November 6 General Election?

(4) If the DOJ's position is that the NVRA prohibits Florida from *removing* non-citizens from its voter registration rolls between today's date and the date of the November 6 General Election, is it the DOJ's position that the NVRA prohibits Florida from taking action to even *identify* non-citizens on its voter registration rolls for later removal and, if warranted by the facts and law, prosecution by appropriate law enforcement authorities?

Sincerely,

Ken Detzner
Secretary of State

cc:     Attorney General Pam Bondi
        Elise Sandra Shore, Esq.