# Exhibit 5



U.S. Department of Justice

Civil Rights Division

---

Office of the Assistant Attorney General          Washington, D.C. 20530

JUN 1 1 2012

The Honorable Ken Detzner
Florida Secretary of State
Florida Department of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399-0250

Dear Mr. Secretary:

    This responds to your letter to the Department of Justice dated June 6, 2012. Your letter was in response to our May 31, 2012 letter regarding our concerns that Florida's new program of citizenship verification for voters appeared to violate provisions of both the Voting Rights Act and the National Voter Registration Act. Based on your June 6 letter, it appears that the State of Florida is unwilling to conform its behavior to the requirements of federal law.

    The Department of Justice has a shared interest with all states in ensuring that all eligible citizens have the opportunity to register and vote, and that ineligible persons, including non-citizens, do not register and vote in federal elections. Toward that end, there are a number of key federal laws in place to ensure that non-citizens do not register and vote in federal elections, and that the rights of eligible voters are protected so they are not deterred from exercising their right to vote.

**Safeguards in Federal Law to Protect Voter Registration**

    The National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA) contain important provisions requiring that every person seeking to register to vote in a federal election swear or affirm under penalty of perjury their United States citizenship. In addition, federal criminal laws prohibit fraudulent voter registration as well as non-citizen voting in federal elections. The Department of Justice does not hesitate to investigate and, where appropriate, prosecute such cases. These federal provisions have proven quite effective in deterring non-citizens from registering to vote and from casting ballots in federal elections.

    At the same time, the NVRA reflects Congress's determination that states cannot have unfettered authority to conduct list maintenance programs during certain periods in the election cycle. In enacting a quiet period during which states are prohibited, with limited exceptions,

from conducting list maintenance programs within 90 days of a federal primary or general election, Congress was concerned both with the clearly negative effect those programs can have on the ability of eligible citizens to ensure that their voter registration is valid for the upcoming election, and with the risk of discouraging participation of eligible voters.

Congress enacted the NVRA against a historical backdrop in this country in which many purge programs were initiated close to elections, which prevented or deterred eligible citizens from casting ballots in those elections. Where the registration status of eligible citizens is questioned close to an election, it creates significant confusion for both voters and election officials that cannot easily be resolved in the immediate pre-election period, when there is insufficient time to identify errors or remedy incorrect removals. The 90-day quiet period in the NVRA protects these legitimate voters from being dropped from the rolls right before an election, and allows for voters to receive adequate notice and a fair opportunity to respond in time to maintain or renew their registration.

**Florida's Voter List Maintenance Program**

With respect to our inquiry to Florida regarding compliance with Section 8 of the NVRA, your June 6 response has provided no information that allows us to change our view that the State's new list maintenance program for verification of citizenship is a "program the purpose of which is to systematically remove the names of ineligible voters from the official list of eligible voters," and that this program is being conducted within the 90-day quiet period established by Section 8(c)(2)(A) of the NVRA. Likewise, you have provided no information indicating that the program fits within any of the statutory exceptions for programs that may be conducted within that quiet period.

Instead, it appears that Florida has initiated a new program for systematic voter removal, which may ultimately target more than 180,000 registered voters, and which the State first made public just before the beginning of the 90-day quiet period that precedes the State's federal primary election. As you are aware, because Florida's primary election for federal office is August 14, 2012, that 90-day period began on May 16, 2012.

As one would expect with a new program that has not previously been tested against real-world information, your program has critical imperfections, which lead to errors that harm and confuse eligible voters. Especially where the program is based on information collected sometimes years ago from driver's license applications, the information is often going to be outdated, as a number of persons will subsequently have become citizens and lawfully registered to vote. Your data appear to be faulty in other ways that have resulted in native-born citizens, including a decorated World War II combat veteran, being sent letters demanding that they affirmatively prove their citizenship. We are aware that one county election supervisor who reviewed a state-provided list of over one thousand potentially ineligible voters determined that the list had a significant error rate, and that she advised you that further use of the list would "potentially disenfranchise eligible voters based on an inaccurate list."

In these circumstances, continuing with any future mailings on this basis during the 90-day quiet period, or removing persons from the voter registration list for failing to respond to the

State's inquiries to date, violate Section 8 of the NVRA. Please immediately cease this unlawful conduct.

With respect to our inquiry to Florida regarding compliance with Section 5 of the Voting Rights Act, your June 6 response has provided no information that indicates that the list maintenance program for verification of citizenship has been precleared under Section 5 by either the Attorney General or the United States District Court for the District of Columbia. This new program is therefore legally unenforceable in the five covered counties in Florida unless and until preclearance is obtained. Please immediately take the steps necessary to comply with these preclearance obligations under Section 5 of the Voting Rights Act.

**Department of Homeland Security's SAVE Program**

Your letter references certain inquiries from the Florida Department of State to the U.S. Department of Homeland Security (DHS) regarding access to the Systematic Alien Verification for Entitlements (SAVE) Program. As you know, the SAVE Program falls within the jurisdiction of DHS, not the Department of Justice. Nonetheless, we are concerned about the inaccuracies in your letter regarding your requests to access this program.

The SAVE Program relies on DHS records, which do not include a comprehensive and definitive listing of U.S. citizens, and does not include, for example, those born in the United States. We understand that what the SAVE Program does provide is a means for governmental units, in appropriate circumstances and subject to the lawful conditions of that program, to verify documentation regarding naturalized U.S. citizens; U.S. citizens born abroad who derived citizenship from U.S. citizen parents and who have acquired certificates of citizenship; and the immigration status of certain categories of non-citizens.

Furthermore, as DHS explained to you as early as October 2011, the SAVE Program can verify these individuals *only* if unique identifiers, such as alien registration numbers or certificate numbers found on immigration-related documents (such as a Certificate of Naturalization or Certificate of Citizenship) are provided. We understand that to ensure accurate verification of current status, and as a general requirement applied to all users of the program, the SAVE Program does not allow verification based on name and/or date of birth alone. We further understand that, as a general requirement applied to all users of the program, SAVE also requires users to submit copies of the immigration-related document if needed to complete the verification process.

To our understanding, the Florida Department of State admitted to DHS nearly eight months ago that the Division of Elections does not collect any of the immigration-related numeric identifiers or documentation that DHS has advised would be necessary to participate in the SAVE Program; although much more recently, your office has suggested that in some cases, this information may be available from records originally collected by the state Department of Highway Safety and Motor Vehicles at the time of driver's license application. We further understand that DHS has continued to express to you its willingness to work with Florida regarding possible SAVE participation, if Florida is able to do so consistent with DHS's program mandates and the conditions it lawfully places on all participants in its programs. In fact, we

- 4 -

understand that the SAVE program has had long and successful working relationships with a number of Florida agencies that need to verify immigration status for their programs and that are able to comply with SAVE requirements.

In short, your claim that the Department of Justice and Department of Homeland Security have worked in concert to deny Florida access to the SAVE Program is simply wrong. By your own admission, Florida has been on notice for at least eight months that the SAVE Program can verify naturalized and derived United States citizens only if Florida provided the appropriate numeric identifiers, and where necessary, the underlying documentation. But Florida has failed either to provide the necessary information to DHS, or to confirm that the necessary information would be available for verification purposes under the SAVE Program. As a result, the significant problems you are encountering in administering this new program are of your own creation.

**The Interest in Ensuring Accurate and Complete Registration Rolls**

As noted, the Department of Justice has an overriding interest in protecting the rights of eligible citizens to register and vote free from unlawful burdens, while at the same time ensuring that ineligible persons do not register and vote in federal elections in violation of the law. Of course, there are lawful mechanisms for individuals to be removed from voter rolls in the event they are proven to be ineligible to vote. To that end, the Department has precleared, under Section 5 of the Voting Rights Act, a number of state programs in covered jurisdictions aimed at ensuring only eligible U.S. citizens are on the voting rolls, including participation by at least one state in the SAVE Program for purposes of verifying citizenship of new voter registrants through the use of appropriate identifying information that DHS requires of governments participating in that program. There is therefore no barrier to states undertaking appropriate programs to identify and remove ineligible non-citizens from the voter rolls, where precleared under Section 5 in covered jurisdictions, where implemented in accord with the requirements of the NVRA, and where otherwise consistent with federal law.

Likewise, where appropriate, the Department has prosecuted individuals for violating federal criminal laws that prohibit registering to vote and voting by non-citizens. To the extent that you have information that potentially implicates illegal voter registration or voting by non-citizens, please share that information as soon as possible with your local offices of the Federal Bureau of Investigation and your local U.S. Attorney's Offices, who have jurisdiction over criminal violations of federal law.

One of Congress's concerns in enacting the protections of the VRA and NVRA, and one of the Department's concerns in enforcing federal law as enacted by Congress, is ensuring that state efforts to find and purge ineligible persons from voter registration lists do not endanger the ability of eligible U.S. citizens to register to vote and maintain their voter registration status. The federal statutes that the Department has called to Florida's attention here are longstanding requirements of which the State is certainly aware. Because the State has indicated its unwillingness to comply with these requirements, I have authorized the initiation of an

enforcement action against Florida in federal court.  If you wish to discuss this matter further, you may contact Bert Russ or Elise Sandra Shore, attorneys in the Voting Section, at 800-253-3931.

Sincerely,

Thomas E. Perez
Assistant Attorney General