**Exhibit 10**

Westlaw.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
(Cite as: 1995 WL 136913 (E.D.Pa.))

Page 1

United States District Court,
E.D. Pennsylvania.

ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW (ACORN), et al.,
Plaintiffs,
v.
Thomas J. RIDGE, et al., Defendants.
UNITED STATES of America, Plaintiff,
v.
COMMONWEALTH OF PENNSYLVANIA, et al.,
Defendants.

Nos. CIV. A. 94-7671, CIV. A. 95-382.
March 30, 1995.

MEMORANDUM

BUCKWALTER

\*1 By order dated March 9, 1995, the complaints filed in *Association of Community Organizations for Reform Now (ACORN), et al. v. Thomas J. Ridge, in his official capacity as Governor of the Commonwealth of Pennsylvania, et al.,* Civil Action No. 94-7671, and *United States of America v. Commonwealth of Pennsylvania, et al.,* Civil Action No. 95-382, were consolidated. Jurisdiction of this court is based upon 28 U.S.C. §§ 1331, 1343(a)(3) & (4), 1345, and 42 U.S.C. § 1983 and § 1973gg-9. A non-evidentiary hearing on the constitutionality of the National Voter Registration Act of 1993 (NVRA), 42 U.S.C.1973gg was held before this court on March 20, 1995, at which time all motions for summary judgment were considered as well.

The order of March 9, 1995 also provides, *inter alia,* as follows:

(2) That Plaintiff's Motion to Set a Hearing on the Motion for Preliminary Injunction is GRANTED. A non-evidentiary hearing on the constitutionality of the National Voter Registration Act of 1993, 42 U.S.C.1973gg, which is the central issue of this litigation, is set for *Monday, March 20, 1995* at *9:30 a.m.* in Courtroom *17A.* The motions for summary judgment in *ACORN v. Ridge,* No. 94-CV-7671, will be considered simultaneously.

(3) That Plaintiffs' Motion to Consolidate a Hearing on the Preliminary Injunction Motion with Trial on the Merits under Fed.R.Civ.P. 65(a)(2), is GRANTED.

(4) That Plaintiffs' Motion for Leave to file a Reply Brief is GRANTED; any reply to the Defendants' Opposition to the United States' Motion for Preliminary Injunction is due by March 15, 1995. The defendant may submit a surreply brief on or before March 20, 1995.

Prior to the hearing held on March 20, 1995, the parties filed a joint stipulation. No additional stipulations or evidence was presented at the hearing. The following stipulations of the parties, supplemented by the competing provisions of the NVRA, are pertinent for purposes of this opinion.

Stipulation A.1. Defendants do not provide simultaneous application for voter registration for federal elections and application for or renewal of motor vehicle driver's licenses.

NVRA Provision—42 U.S.C. § 1973gg-3(a).

(1) Each state motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application.

(2) An application for voter registration submitted under paragraph (1) shall be considered as updating any previous voter registration by the applicant.

Stipulation A.2. Defendants do not provide any

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
**(Cite as: 1995 WL 136913 (E.D.Pa.))**

voter registration forms at driver's license photo centers or other offices of the Department of Transportation responsible for driver's licensing.

NVRA Provision 42 U.S.C. § 1973gg-3(c)(1).

(1) Each State shall include a voter registration application form for elections for Federal office as part of an application for a State motor vehicle driver's license.

*2 Stipulation B.1. The State has not designated any agencies, either mandatory or discretionary, as voter registration agencies under Section 7(a) of the NVRA. 42 U.S.C.1973gg-5(a).

NVRA Provision 42 U.S.C. § 1973gg-5(a).

(1) Each State shall designate agencies for the registration of voters in elections for Federal office.

(2) Each State shall designate as voter registration agencies—

   (A) all offices in the State that provide public assistance; and

   (B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.

(3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.

   (B) Voter registration agencies designated under subparagraph (A) may include—

      (i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in paragraph (2)(B) that provide services to persons with disabilities; and

      (ii) Federal and nongovernmental offices, with the agreement of such offices.

Stipulation B.2. National voter registration forms are not made available to clients at social service agencies in Pennsylvania.

NVRA Provision 42 U.S.C. § 1973gg-5(a)(4)(A).

(4)(A) At each voter registration agency, the following services shall be made available.

   (i) Distribution of mail voter registration application forms in accordance with paragraph (6).

   (ii) Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance.

   (iii) Acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

Stipulation B.3. Social service agencies in Pennsylvania which provide public assistance including Women, Infant and Children, and Aid to Families with Dependent Children benefits, medicaid and food stamp programs do not, in conjunction with each application for service and with each recertification renewal or change of address form, ask each client whether they would like to register to vote in federal elections, nor do they present clients with a voter registration declination form.

NVRA Provision 42 U.S.C. § 1973gg-5(a)(6)(A).

(6) A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall—

   (A) distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance—

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
**(Cite as: 1995 WL 136913 (E.D.Pa.))**

(i) the mail voter registration application form described in section 1973gg-7(a)(2) of this title, including a statement that—

(I) specifies each eligibility requirement (including citizenship);

*3 (II) contains an attestation that the applicant meets each such requirement; and

(III) requires the signature of the applicant, under penalty of perjury; or

(ii) the office's own form if it is equivalent to the form described in section 1973gg-7(a)(2) of this title, unless the applicant, in writing, declines to register to vote.

Stipulation B.4. People with disabilities are not offered an opportunity to register to vote in federal elections in conjunction with state-funded services provided in their homes. Specifically, the State does not ask each such client whether they would like to register to vote, and does not provide these individuals with assistance in completing the voter registration forms nor transmit completed forms to the relevant county offices.

NVRA Provision 42 U.S.C. § 1973gg-5(a)(4)(B).

(B) If a voter registration agency designated under paragraph 2(B) provides services to a person with a disability at the person's home, the agency shall provide the services described in subparagraph (A) at the person's home.

Stipulation III. 1. The voter registration forms used in Pennsylvania for mail-in registration require that illiterate applicants have their registration forms notarized as required by state law. 25 P.S. 623-20.2(d) and 623-20.3(d); 25 P.S. 951-18.2(d) and 951-18.1(d).

NVRA Provision 42 U.S.C. § 1973gg-7(b)(3).

The mail voter registration form developed under subsection (a)(2) of this section—

(3) may not include any requirement for notarization or other formal authentication.

Stipulation III. 2. The voter registration forms used in Pennsylvania for mail-in registration request more information than permitted by the NVRA. The forms ask voters to state their name, address, date of birth and party preference, as well as how long they have lived at their present address, the address where previously registered, their sex, the state or territory where they were born, their color, height, hair and eye color, and whether they are entitled to receive assistance (i.e., whether they are illiterate or have a physical disability).

NVRA Provision 42 U.S.C. § 1973gg-7(b)(1).

The mail voter registration form developed under subsection (a)(2) of this section—

(1) may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process.

Stipulation III. 3. The Commonwealth, through the Secretary of the Commonwealth and the Commissioner of the Bureau of Commissions, Elections and Legislation has sent letters to the counties regarding the NVRA on December 8, 1994, January 29, 1995 and February 14, 1995. The Department of State has advised the counties to accept national voter registration forms, but does not know for certain if the counties are doing so.

*4 Stipulation IV. 1. Pennsylvania law requires voters to be purged for failure to vote in two years; in all counties except for Philadelphia, this process must be completed within the first three months of each year. 25 P.S. 951-38. In Philadelphia, state law requires that registrants who have not voted in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
**(Cite as: 1995 WL 136913 (E.D.Pa.))**

two years be notified that their registration will be cancelled if they do not vote in the next primary or election, and that such registrants who do not vote in the next primary or election be purged from the voting rolls. 25 P.S. 623-40.

Stipulation IV. 2. Pennsylvania law permits the removal of names from the voter registration laws up to 15 days before a primary or general election. 25 P.S. 623-33, 62335, 623-36 and 25 P.S. 951-31 and 951-34.

Stipulation IV. 3. The state, through the Secretary of the Commonwealth and the Commissioner of the Bureau of Commissions, Elections and Legislation has sent correspondence to the counties regarding the conflicts between the NVRA and state law regarding voter registration cancellation.

Stipulation IV. 4. Some counties have determined not to initiate any purge for nonvoting, some counties have already notified voters of the county's intent to cancel their registration, and other counties plan to begin the purge process in the near future. Some of the counties that purge registrants for non-voting will keep the names of these registrants on a separate list so that they will remain eligible to vote in federal elections.

NVRA Provision 42 U.S.C. § 1973gg-6(a)(4) provides each state shall—

conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of the eligible voters by reason of—

(A) the death of the registrant; or

(B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) of this section.

NVRA Provision 42 U.S.C. § 1973gg-6( b) provides—

Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office—

(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C.1973, et. seq.); and

(2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote.

NVRA Provision 42 U.S.C. § 1973gg-6(c)(2)(A) provides—

A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of the ineligible voters from the official lists of eligible voters.

(B) Subparagraph (A) shall not be construed to preclude—

(i) the removal of names from official lists of voters on a basis described in paragraph (3)(A), at the request of registrant, or (B), as provided by state laws, by reason of criminal conviction or mental incapacity, or (4)(A) of subsection (a) of this section; or

*5 (ii) correction of registration records pursuant to this subchapter.

Stipulation V. Generally, voters who move within a county are not allowed to vote on the day of election unless they have re-registered or filed a removal notice with the registrar regarding the change thirty days before the election, or unless they have moved within thirty days of the election. According to Pennsylvania law, the exception is that where an individual has moved within the same election district (precinct), in any county other than Philadelphia, that individual will be allowed at the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

election or primary following removal if a removal form is filed at the time of election. 25 P.S. 951-26(b).

NVRA Provision 42 U.S.C. § 1973gg-6(c)(d)(e) and (f) (not copied verbatim herein) set forth voter removal programs which differ from the provisions of 25 P.S. 951-26(b).

Stipulation VI. 1. Although the state has appointed the Secretary of the Commonwealth as the Chief State Election Official to be responsible for the implementation of the NVRA in Pennsylvania, the former Secretary of the Commonwealth has represented that he could not ensure that the counties will comply with the Act and did not have complete information regarding the actions that the counties were taking with respect to the NVRA. There has been no change in this regard under the newly appointed Acting Secretary of the Commonwealth.

Stipulation VI. 2. The Acting Secretary of the Commonwealth has not ordered the creation of voter registration forms which would comply with the NVRA, nor ordered national voter registration forms for distribution. Additionally, the Acting Secretary of the Commonwealth has not distributed current Pennsylvania voter registration forms to agencies required by the NVRA to conduct voter registration or distributed such forms to organized voter registration program.

Stipulation VII. 1. Legislation to adopt procedures, most of which would allow persons to register to vote in the manner provided by the NVRA, was passed by the Pennsylvania House of Representatives as House Bill 2978, in October 1994, but was not enacted.

Stipulation VII. 2. The Pennsylvania legislature began its regular legislative session on January 3, 1995, but has passed no legislation to implement the NVRA.

Stipulation VIII. 1. While the plaintiffs maintain that all evidence of cost is irrelevant to these proceedings, the State maintains that such costs are relevant. All parties agree that the state must expend some funds in order to achieve compliance with the NVRA.

Stipulation VIII. 2. Various agencies of the United States government, including the Departments of Agriculture and Health and Human Services, have authorized reimbursement of some state agencies for some of the expenses they incur in the implementation of the NVRA.

Stipulation VIII. 3. The Pennsylvania Department of State states that it has estimated its costs of implementing the NVRA as follows: Fiscal Year 1994-95—$287,177: Fiscal Year 1995-96—$1,261,298; and Fiscal Year 1996-97—$826,618.

*6 Stipulation VIII. 4. The Pennsylvania Department of Transportation states that it has estimated its costs of implementing the NVRA as follows: Fiscal Year 1994-95—$740,450; Fiscal Year 1995-96—$1,094,018; and Fiscal Year 1996-97—$1,135,408.

Stipulation VIII. 5. Plaintiffs do not concede the accuracy of these cost estimates and would assert that these estimates are provided as unsupported.

The above forms the factual basis on which I am to determine whether plaintiffs in this consolidated case are entitled to the relief they seek through the complaints they have filed. Although plaintiffs are seeking considerably more than a determination of the constitutionality of the NVRA and a determination that the defendants are not in compliance with it, it is clear that based upon the limited record before me, I can only make those two determinations at this time, along with declarations as to what current Pennsylvania laws are contrary to the NVRA.

The determination dealing with compliance is obvious. The stipulations which I have listed above

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
**(Cite as: 1995 WL 136913 (E.D.Pa.))**

describe the failure of defendants to comply with the NVRA. Moreover, the existing Pennsylvania law contrary to the NVRA are also set forth.

As to the second determination, I find the conclusion inescapable that the NVRA is constitutional. To paraphrase, under Article I, Section 4 of the Constitution, "Congress may at any time by Law make or alter such Regulations" which were "prescribed in each state by the Legislatures thereof" for regulating "the Times, Places and Manners of holding Elections for Senators and Representatives."[FN1] The registration system proposed by the NVRA sets forth the mode or method, *i.e.,* the manner by which a voter will be registered to vote in a federal election; these proposals are clearly within the powers granted Congress.

Defendants, on the other hand, argue that the NVRA is unconstitutional because it violates the Tenth Amendment.

> This is because the provision of the NVRA exceed Congress' constitutional grant of authority over the time, place and manner of elections found in Article I, Section 4 of the Constitution and effectively conscript state legislatures to implement a federal program in violation of the Tenth Amendment to the United States Constitution.

Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, p. 6.

In support of its argument, defendants cite *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408 (1992). This is apparently the same position taken by the proponents of the unconstitutionality of the NVRA in *Wilson v. United States,* No. C95-20042 JW (N.D. Cal. March 2, 1955). Judge Ware of the Northern District of California rejected that argument and I agree with his conclusion in that regard.

I am not sure why the proponents of the unconstitutionality of NVRA rely on a case which, upon an in depth analysis, appears to be clearly not on point with the stipulated facts and applicable law of this case. It could be that statements regarding Tenth Amendment jurisprudence such as the following

*7 "Most of our recent cases interpreting the Tenth Amendment have concerned the authority of Congress to subject state government to generally applicable laws. The court's jurisprudence in this area has traveled an unsteady path." *New York v. United States,* 112 S.Ct. at 2420, or "Supreme Court decisions about the Tenth Amendment do not reflect a pattern of straight line development of a theme. Rather, the cases seem to reflect a series of shifting perspectives on the nature and breadth of the powers reserved to the states under the Tenth Amendment leaving lower courts with few concrete principles to decide cases." *Koog v. United States,* 852 F.Supp. 1376 (W.D. Tex.1994)

encouraged defendants to pursue the arguments they have before this court. But, as Judge Ware in *Wilson v. United States* pointed out, the "New York decision discussed limits of congressional power under the Commerce Clause." (P. 5 of Judge Ware's opinion). While it is certainly proper argument to suggest by analogy that the law expounded in *New York* should apply to the present case, defendants have not convinced me that there is any significant resemblance between those cases deciding commerce clause issues and those deciding Article I, Section 4 issues.

The Commerce Clause is a broad and general one—"The Congress shall have Power ... To Regulate Commerce ... among the several States ...—compared to the more specific terms of Article I, Section 4. As pointed out in plaintiffs' brief, the Supreme Court has discussed the scope of congressional power under Section 4 in *Smiley v. Holm,* 285 U.S. 355 (1932):

The subject matter is the "times, places and man-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
**(Cite as: 1995 WL 136913 (E.D.Pa.))**

ner of holding elections for senators and representatives." It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.

It is correct as defendant points out, that the *Smiley* court was not confronted directly with the question as to whether Congress could enact legislation such as the NVRA. Nevertheless, the statement from *Smiley* cannot be ignored as defendants would suggest. As previously alluded to, the defendants' Tenth Amendment[FN2] argument is based upon their assertion that the power to regulate registration in the manner set forth in the NVRA was not delegated to the United States and thus exceeds Congress' constitutional grant of authority. They have pointed to no case which either directly or by analogy supports their position. *Smiley,* on the other hand, lends credence to the conclusion of this court set forth on page 11 of this opinion, together with other cases in the field of Tenth Amendment law which buttress this opinion.[FN3]

*8 The defendants also argue that NVRA law governs the qualifications of voters, a right specifically given to the States. But NVRA does not establish who is entitled to vote. Instead, it establishes the method which an otherwise qualified voter must follow to exercise his or her right to vote.

Finally, defendants raise the argument that the state would be burdened by the cost associated with implementation of the NVRA. (See figures set forth in stipulation). Again, there is no law to support defendants' position that because a state must bear the cost, the legislation therefore fails to pass constitutional muster. We note in passing that recent "unfunded mandate" legislation, in any event, has a much higher monetary threshold than what the state alleges it will have to bear in this case.

As I suggested in the beginning of this opinion, I cannot based on the record before me grant the injunctive relief plaintiffs request. In this circuit, *Natural Resources Defense Council, Inc. v. Texaco Ref. and Mktg., Inc.,* 906 F.2d 934 (3d Cir.1990) is controlling. That case stands for the proposition that the irreparable harm necessary to enjoin violations of a particular Act cannot be presumed from violations of the Act but that traditional equitable standards are required to be applied to determine whether injunctive relief is appropriate. *Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982) cited by plaintiffs actually supports defendants' argument in this regard. *See also Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531 (1987), reiterating:

> Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles ... Unless a statute in so many words, or by a necessary and inescapable inference, restricts the courts' jurisdiction in equity, the full scope of that jurisdiction is to be applied.

*See Weinberger* (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395 (1946)).

Congress could have provided a provision to the effect that a court shall enter an injunction upon showing that the Act was violated, but no such provision exists in the NVRA.[FN4] However, my order will reflect one of the provisions under which this action was brought, which states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 § UCC 2201.

An order follows.

### ORDER

AND NOW, this 30th day of March, 1995, upon hearing having been held pursuant to the order of this court dated March 9, 1995, and based upon the joint stipulation of the parties, filed March 17, 1995, the court declares that:

(1) The National Voter Registration Act of 1993 is constitutional;

(2) The defendants are not in compliance with the National Voter Registration Act of 1993 as of January 1, 1995;

*9 (3) The Pennsylvania law requiring voters to be purged for failure to vote in two years is contrary to the National Voter Registration Act;

(4) The Pennsylvania law permitting removal of names from voter registration up to fifteen (15) days before a primary or general election is contrary to the National Voter Registration Act of 1993;

(5) The voter registration forms used in Pennsylvania for mail in registration requiring that illiterate applicants have their registration form notarized and requesting more information than permitted by the NVRA are contrary to the National Voter Registration Act of 1993;

(6) The provisions of Pennsylvania law for voters who move in the same county are contrary to the National Voter Registration Act of 1993.

For purposes of scheduling further proceedings to determine any necessary or proper relief based upon this judgment, a status conference is set for *Monday, April 10, 1995 at 10:00 a.m.* in the chambers of the undersigned.

FN1. The text of Article I, Section 4 first clause reads as follows:

[1] The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

FN2. The Tenth Amendment simply states:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

FN3. For example, see *United States v. Darby,* 312 U.S. 100 (1941), where when speaking in reference to the Tenth Amendment, the court said "from the beginning and for many years the amendment has been construed as not depriving the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adaptable to the permitted end."

FN4. The NVRA provides:

§ 1973gg-9. Civil enforcement and private right of action

(a) Attorney General

The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this subchapter.

(b) Private right of action

(1) A person who is aggrieved by a violation of this subchapter may provide written notice of the violation to the chief election official of the State involved.

E.D.Pa. 1995

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631
**(Cite as: 1995 WL 136913 (E.D.Pa.))**

Association of Community Organizations for Reform Now (ACORN) v. Ridge
Not Reported in F.Supp., 1995 WL 136913 (E.D.Pa.), 63 USLW 2631

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.