IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 4:12-CV-00285-WS-CAS |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF FLORIDA and KEN DETZNER, | ) | |
| in his official capacity, | ) | |
| | ) | |
| *Defendants,* | ) | |
| | ) | |
| LUIS I. GARCIA, DIANA K. | ) | |
| WHITEHURST, HAL DAVID RUSH, and | ) | |
| BARBARA A. DEREUIL, | ) | |
| | ) | |
| *Defendant-Intervenors/* | ) | |
| *Counter-Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Counter-Defendant.* | ) | |

**ANSWER AND COUNTERCLAIM OF DEFENDANT-INTERVENORS
LUIS I. GARCIA, DIANA K. WHITEHURST, HAL DAVID RUSH, and
BARBARA A. DEREUIL**

**ANSWER**

Defendant-Intervenors LUIS I. GARCIA, DIANA K. WHITEHURST, HAL

DAVID RUSH, and BARBARA A. DEREUIL, a bipartisan group of eligible Florida

voters (hereafter, "Intervenors"), by and through undersigned counsel, hereby Answer the

Complaint of the Plaintiff UNITED STATES OF AMERICA (D.E. #2) and allege as follows:

1.      Admitted.

2.      To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are denied.

## JURISDICTION AND VENUE

3.      Admitted.

4.      Admitted.

## PARTIES

5.      To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

6.      To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

7.      Admitted.

## CAUSE OF ACTION

8.      To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

9.     To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph purports to quote a federal statute, the statute speaks for itself and this paragraph does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

10.     To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph purports to quote a federal statute, the statute speaks for itself and this paragraph does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

11.     To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are denied.

12.     To the extent this paragraph purports to characterize the contents of a website, the website speaks for itself and this paragraph does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

13.     Admitted.

14.     To the extent this paragraph purports to characterize the contents of a website, the website speaks for itself and this paragraph does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

15.     Admitted.

16.     Admitted.

17.     Intervenors admit that in early April 2012, the Florida Division of Elections ('DOE') sent to the 67 Florida County Supervisors of Elections a list of voters

identified as potentially ineligible due to lack of citizenship.   Intervenors admit that Attachment 1 to the Complaint referenced in Paragraph 17 purports to be a PowerPoint document entitled "Processing Ineligible Registered Voter-Non-Immigrants," but lack sufficient information to admit or deny the authenticity of the document.   To the extent that the third, fourth, fifth and sixth sentences of Paragraph 17 purport to paraphrase Attachment 1, Intervenors state that no responsive pleading is required, as the document speaks for itself.   Intervenors further state that they are otherwise without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph, and therefore deny them.

18.     Intervenors admit that the document attached to the Complaint as Exhibit 2 purports to be a PowerPoint presentation entitled "List Maintenance Categories and Procedures," but after reasonable investigation lack sufficient information to admit or deny  the remaining allegations in this paragraph, and therefore deny them.

19.     Denied, except that Attachment 3 purports to be a letter dated May 31, 2012, from the Miami-Dade County Supervisor of Elections to the Florida Department of State.

20.     After reasonable investigation, Intervenors lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny them.

21.     To the extent this paragraph purports to quote from an attachment to the Complaint, the attachment speaks for itself and this paragraph requires no responsive pleading.   To the extent this paragraph contains factual allegations, they are admitted.

22.     To the extent this paragraph purports to characterize an attachment to the Complaint, the attachment speaks for itself and this paragraph requires no responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

23.     To the extent this paragraph purports to characterize an attachment to the Complaint, the attachment speaks for itself and this paragraph requires no responsive pleading.  To the extent this paragraph contains factual allegations, they are admitted.

24.     After reasonable investigation, Intervenors lack sufficient information to admit or deny the allegations in this paragraph, and therefore deny them.

25.     To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are denied.

26.     To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph purports to quote a federal statute, the statute speaks for itself and this paragraph does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are denied.

27.     To the extent this paragraph contains conclusions of law, it does not require a responsive pleading.  To the extent this paragraph contains factual allegations, they are denied.

## **COUNTERCLAIM**

Counter-Plaintiff-Intervenors hereby sue Counter-Defendant United States of America and allege:

## **Introduction**

This lawsuit presents one fundamental question:  When official State of Florida records indicate that a person is not a U.S. citizen, yet nevertheless is registered to vote, may the county Supervisor of Elections, acting under the direction of the Secretary of State, ask that person to confirm his U.S. citizenship and, if that person is not a U.S. citizen, remove him or her from the voter registration rolls?

The material facts of this case are undisputed.  There are hundreds, if not thousands, of registered voters throughout the State of Florida who, at some point in the past several years, submitted official documents to the State (such as driver's license applications)—often under oath or penalty of perjury—on which they declared that they are not U.S. citizens (hereafter, "Self-Identified Non-Citizens").  Over the past nine months, the State of Florida repeatedly has attempted to confirm the citizenship status of these Self-Identified Non-Citizens, as well as other apparent non-citizens who are registered to vote, with U.S. Citizenship and Immigration Services ("USCIS").  Federal law expressly requires USCIS to "provide the requested [citizenship] verification or status information" to state and local government officials, 8 U.S.C. § 1373(c), yet USCIS consistently has refused to provide any information in response to these requests.

Having been inexplicably denied the federal government's assistance in confirming the citizenship status of these Self-Identified Non-Citizens, the Florida Secretary of State provided each county Supervisor of Elections with a list of the Self-Identified Non-Citizens who are registered to vote in his or her respective county.  It has been widely reported that, based on this information, many county Supervisors of

Elections have initiated the process expressly set forth in Florida law, *see* Fla. Stat. § 98.075(7), for confirming whether these Self-Identified Non-Citizens are qualified to vote (for example, because they recently became U.S. citizens).

Those county supervisors sent letters by certified mail, asking the Self-Identified Non-Citizens in their respective counties to confirm whether they are, in fact, U.S. citizens and to provide a copy of documentation confirming their citizenship status within 30 days.  If an individual's letter is returned as undeliverable, the Supervisor must publish notice in a newspaper of general circulation.  Fla. Stat. § 98.075(7)(a)(2).  After the period for submitting a response elapses, each supervisor must "make a final determination" as to whether each of these Self-Identified Non-Citizens is qualified to vote.  Fla. Stat. § 98.075(7)(a)(3)-(5).  Since those letters were distributed, a substantial number of individuals throughout the State have responded to their Supervisor, admitting that they are not U.S. citizens and therefore are unqualified to vote.

The U.S. Department of Justice has filed the underlying lawsuit (D.E. #2) against the State of Florida and Florida Secretary of State Ken Detzner, alleging that these activities violate the National Voter Registration Act, 42 U.S.C. § 1973gg-6.  Thus, after refusing to discharge its statutory obligation to assist the State of Florida in confirming the citizenship status of these Self-Identified Non-Citizens, the Government has now declared that it is illegal for the State of Florida to ask them to confirm their U.S. citizenship.

The U.S. Supreme Court has recognized that a person's fundamental constitutional right to vote "can be denied by a debasement or dilution of the weight of a

citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see also Anderson v. United States*, 417 U.S. 211, 227 (1974) (holding that every duly qualified voter has "a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes"). The Court explained:

> Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.

*Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

Intervenors support the State's efforts to confirm the citizenship status of people on Florida's voter registration rolls, which is nothing more than an attempt to protect the fundamental constitutional rights of all properly registered and duly qualified voters, including the Intervenors. The State's actions ensure that votes cast by properly registered and duly qualified voters, such as Intervenors, are not diluted, cancelled out, or effectively nullified by votes from people who are constitutionally not qualified to vote, such as non-citizens, in violation of the U.S. Constitution's Due Process Clause.

The National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg-6, does not prevent the removal from the voter rolls of Self-Identified Non-Citizens who are not, in fact, U.S. citizens—either in general, or within 90 days of a federal election. Although the NVRA addresses the removal of individuals from the voter registration rolls based on changes in circumstance following their initial registration, it neither contemplates the possibility that non-citizens may erroneously be registered to vote, nor places deadlines

on a State's efforts to identify and remove them from the voter registration rolls.  *See* 42 U.S.C. § 1973gg-6(a)(3)-(4).  Indeed, under DOJ's literal and legalistic interpretation of the NVRA, election officials not only would be prohibited from removing non-citizens within the 90 days before a federal election, *see* 42 U.S.C. § 1973gg-6(c)(2), they would be barred from removing them ***at all***, 42 U.S.C. § 1973gg-6(a)(3).  This Court should eschew reading the law to mandate such an absurd result.

Furthermore, even if Supervisors' actions were covered by the NVRA, they are list maintenance "activities," *see* 42 U.S.C. § 1973gg-6(b), (i)(1), that the NVRA permits within 90 days of federal elections, and are not part of a prohibited list maintenance "program," 42 U.S.C. § 1973gg-6(c)(2)(A).  Furthermore, the Supervisors' activities fall within an express exception to the NVRA's 90-day cutoff for the "correction of registration records pursuant to this Act."  42 U.S.C. § 1973gg-6(c)(2)(B)(ii).  Finally, interpreting the NVRA to prevent States from removing non-citizens from their voter registration rolls for a combined period of up to 180 days in every election year (when people are most likely to register to vote) would raise serious constitutional concerns under the Voter Qualification Clauses. *See* U.S. CONST. art. I, § 2; U.S. CONST. amend. XVII; *see also* U.S. CONST. amend. V (Due Process Clause).

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because it arises under the Constitution and laws of the United States.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and division.

## PARTIES

### Intervenors-Counter-Plaintiffs

3.     Intervenor-Counter-Plaintiff Luis I. Garcia is a properly registered and duly qualified elector of the State of Florida.  He resides on S.W. 154th Place in Miami, Florida.  He is a member of the Republican Party, and intends to vote in the General Election.

4.     Intervenor-Counter-Plaintiff Diana K. Whitehurst is a properly registered and duly qualified elector of the State of Florida.  She resides on Mark Lane in Leesburg, Florida.  She is a member of the Democratic Party, and intends to vote in the General Election.

5.     Intervenor-Counter-Plaintiff Hal David Rush is a properly registered and duly qualified elector of the State of Florida.   He resides on River Hall Drive in Jacksonville, Florida.  He is a member of the Republican Party, and intends to vote in the General Election.

6.     Intervenor-Counter-Plaintiff Barbara A. Dereuil is a properly registered and duly qualified elector of the State of Florida.  She resides on Northeast 25th Avenue in Fort Lauderdale, Florida.  She is a member of the Republican Party, and intends to vote in the General Election.

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

**Counter-Defendant**

7.      Counter-Defendant United States of America is a sovereign nation bound by the U.S. Constitution and federal law.

**THE U.S. CITIZENSHIP REQUIREMENT
FOR VOTER REGISTRATION IN FLORIDA**

8.      The Florida Constitution specifies, "Every citizen of the United States who is at least eighteen years of age and who is a permanent resident of the state, if registered as provided by law, shall be an elector of the county where registered." FLA. CONST., art. VI, § 2.

9.      Florida law further confirms that a person "may become a registered voter only if that person . . . [i]s a citizen of the United States." Fla. Stat. § 97.041(1)(a)(2).

10.      The official voter registration applications produced by the federal Government and the State of Florida both contain the question, "Are you a citizen of the United States of America?," and provide boxes for the applicant to check to indicate whether or not he or she is a U.S. citizen.  Fla. Stat. § 97.052(2)(r); *see also* 42 U.S.C.  §§ 1973gg-3(c)(2)(C)(i), 15483(b)(4)(A)(i).

11.      When an applicant files a voter registration application, the Florida Department of State must verify the accuracy and authenticity of the driver's license number, Florida identification card number, or last four digits of the social security number provided by the applicant.  Fla. Stat. § 97.053(6); *see also* 42 U.S.C. § 15483(a)(5)(A).  Because certain non-citizens are legally entitled to receive driver's licenses, state identification cards, and Social Security numbers, this process does not— and is not intended to—confirm the citizenship of people attempting to register to vote.

12.     If the Florida Department of State confirms the accuracy and authenticity of an applicant's driver's license number, Florida identification card number, or last four digits of his social security, the voter registration official must enter that applicant into the statewide voter registration system as an active voter.  Fla. Stat. § 97.053(7); 42 U.S.C. § 15483(a)(5)(A).

13.     Other than confirming that the applicant checked the appropriate box on the voter registration form, Fla. Stat. § 97.053(5)(a)(4), an election official does not take any action to confirm the applicant's representation that he is a U.S. citizen.

### FLORIDA'S VOTER REGISTRATION DATABASE AND THE NVRA

14.     Federal and state law require the Florida Secretary of State to operate and maintain, "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive, computerized statewide voter registration system" (hereafter, the "Database").  Fla. Stat. § 98.035(1); *see also* 42 U.S.C. § 15483(a)(1)(A).

15.     The Database "must contain the name and registration information of every legally registered voter in the state," Fla. Stat. § 98.035(2); *accord* 42 U.S.C. § 15483(a)(1)(A)(ii), and must be "coordinated with other agency databases in the State," 42 U.S.C. § 15483(a)(1)(A)(iv).

16.     The NVRA provides that, once a person is registered to vote, he may be removed from the Database only if one of the following changes in circumstance occurs:

  a.     he asks in writing to be removed, *see* 42 U.S.C. § 1973gg-6(a)(3)(A);

  b.     he is convicted of a felony, *see* 42 U.S.C. § 1973gg-6(a)(3)(B);

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

c.     he is declared mentally incapacitated with respect to voting, *see* 42 U.S.C. § 1973gg-6(a)(3)(B);

d.     he dies, *see* 42 U.S.C. § 1973gg-6(a)(4)(A); or

e.     he changes his residence, *see* 42 U.S.C. § 1973gg-6(a)(4)(B).

17.     The NVRA does not expressly or specifically address the possibility that a non-citizen erroneously may have been registered to vote and added to the database.

18.     The NVRA allows states to conduct both "programs" and "activities" that are designed to "protect the integrity of the electoral process by ensuring the maintenance" of the Database.  42 U.S.C. § 1973gg-6(b)(1), (i)(1).

19.     The NVRA allows states to conduct two different types of general "programs" to "remove the names of ineligible voters" from the database:

a.     First, a state is affirmatively required to conduct a Change-of-Address Program, such as that established by Fla. Stat. § 98.065, to update the Database based on change-of-address information.  *See* 42 U.S.C. § 1973gg-6(a)(4)(B).

b.     Second, a state is permitted to engage in a list maintenance program to update the Database based on death records.  *See* 42 U.S.C. § 1973gg-6(a)(4)(A).

20.     In addition to conducting those two types of programs, States also are permitted to engage in list maintenance "***activities***," such as those set forth in Fla. Stat. § 98.075, to update or correct the Database based on information that particular registered voters are unqualified to vote, 42 U.S.C. § 1973gg-6(b), (i)(1).

## CHANGE-OF-ADDRESS "PROGRAMS" UNDER FLA. STAT. § 98.065

21.    As required by the NVRA, the State of Florida enacted Fla. Stat. § 98.065 to establish a "list maintenance program" aimed at identifying people who have moved sometime after they registered to vote (hereafter, "Change-of-Address Program"). *See* 42 U.S.C. § 1973gg-6(a)(4)(B).

22.    When implementing a Change-of-Address Program, the Supervisor of Elections may identify voters who have moved sometime after registering to vote by:

a.    obtaining change-of-address information from the U.S. Postal Service or its licensees;

b.    sending non-forwardable, return-if-undeliverable mail to all registered voters in the county; or

c.    sending non-forwardable, return-if-undeliverable mail to all registered voters who neither voted in the last two years nor updated their voter registration records in that time.  Fla. Stat. § 98.065(2)(a)-(c).

23.    If a Supervisor of Elections receives information in the course of a Change-of-Address Program from one of the sources listed above that a registered voter has moved within the State, he must update the voter's registration record to reflect the new address, and send the voter an address change notification.  Fla. Stat. § 98.065(4)(a); *see also* Fla. Stat. § 98.0655(2).

24.    If a Supervisor of Elections receives information in the course of a Change-of-Address Program from one of the sources listed above that a registered voter has moved outside the State, he must send that voter an "address confirmation final

notice," which includes a postage prepaid, preaddressed form for the voter to complete and return.  Fla. Stat. § 98.065(4)(b); *see also* Fla. Stat. § 98.0655(3).

        a.      If the person does not return the enclosed form within 30 days to confirm his continued residency within the State, or if the notice is returned as undeliverable, the Supervisor must designate that voter as inactive.    Fla. Stat. § 98.065(4)(c).

        b.      If the voter does not update his voter registration, request an absentee ballot, or appear to vote by the second general election after being placed on the inactive list, the Supervisor must remove that voter's name from the Database.  Fla. Stat. § 98.065(4)(c).

25.     A Supervisor of Elections must implement a Change-of-Address Program "at a minimum in each odd-numbered year."  Fla. Stat. § 98.065(3).

26.     A Change-of-Address Program "must be completed not later than 90 days prior to the date of any federal election."  Fla. Stat. § 98.065(3).  A supervisor may not send out a change-of-address notification or "address confirmation final notice," or remove a voter's name from the database due to a possible change-of-address, within 90 days of a federal election.  Fla. Stat. § 98.065(5).

## LIST MAINTENANCE "ACTIVITIES" UNDER FLA. STAT. § 98.075

27.     In addition to conducting list maintenance programs, such as Change-of-Address Programs, a Supervisor of Elections also may "ensur[e] the maintenance of accurate and current voter registration records" through "list maintenance *activities*" under Fla. Stat. § 98.075, which are aimed at identifying and removing from the Database

individuals who do not possess the statutory and constitutional qualifications for voting, but nevertheless were erroneously registered to vote. *See* 42 U.S.C. § 1973gg-6(b), (i)(1).

28.    Florida law provides in relevant part that, if a supervisor "receives information . . . that a registered voter is ineligible because he or she . . . is not a United States citizen," the supervisor "must adhere" to the Potentially Unqualified Voter Removal Process set forth in the statute. Fla. Stat. § 98.075(6).

29.    Under the Potentially Unqualified Voter Removal Process, once a Supervisor of Elections "receives notice or information" that a registered voter is ineligible to vote because he is not a U.S. citizen, the Supervisor must notify that person by mail within 7 days of his "potential ineligibility." Fla. Stat. § 98.075(7)(a)(1).

30.    The notice must be sent by certified mail, Fla. Stat. § 98.075(7)(b)(3), and:

    a.    explain the basis for the recipient's potential ineligibility;

    b.    include a copy of any documentation upon which the recipient's potential ineligibility is based;

    c.    state that, if the recipient fails to respond within 30 days, he may be deemed unqualified to vote and removed from the Database;

    d.    contain a return form through which the recipient may admit or deny the Supervisor's allegations;

    e.    notify the recipient that he may request a hearing; and

    f.    instruct the recipient to contact the Supervisor if he needs assistance.

Fla. Stat. § 98.075(7)(a)(1)(a)-(e).

31.     If the notice is returned as undeliverable, the Supervisor must publish the notice in a newspaper of general circulation.  Fla. Stat. § 98.075(7)(a)(2).

32.     Under the Potentially Unqualified Voter Removal Process, if the recipient:

a.     admits the accuracy of the information underlying his potential ineligibility, the Supervisor must "make a final determination of ineligibility" and remove his name from the Database. Fla. Stat. § 98.075(7)(a)(4);

b.     fails to respond to the Supervisor's notice, or denies the accuracy of the information underlying his potential ineligibility but does not request a hearing, the Supervisor must consider the evidence and "make a final determination of the voter's eligibility."  Fla. Stat. § 98.075(7)(a)(3), (5).  "If the supervisor determines that the voter is ineligible, the supervisor shall remove the name of the registered voter from the [Database]."  *Id*.

c.     requests a hearing, the Supervisor shall schedule one, after which he must "make a final determination of the voter's eligibility."  Fla. Stat. § 98.075(7)(a)(4).  Again, if the Supervisor concludes that the person is unqualified to vote, he must remove the person's name from the Database.  *Id*.

33.     All determinations concerning voter ineligibility in the Potentially Unqualified Voter Removal Process must be made by a preponderance of the evidence. Fla. Stat. § 98.075(7)(b)(1).

34.     If a Supervisor determines through the Potentially Unqualified Voter Removal Process that a person is ineligible to vote and removes that person from the

Database, that person may appeal the adverse determination in the circuit court for his county of residence.  Fla. Stat. §§ 98.075(7)(b)(5), 98.0755.

35.    The removal of unqualified voters through the Potentially Unqualified Voter Removal Process, *see* Fla. Stat. § 98.075(7), is a "[l]ist maintenance activity" performed by county Supervisors of Elections.  Fla. Stat. § 98.075(1).  In the event a supervisor fails to fulfill these responsibilities, the Florida Department of State "shall satisfy the appropriate requirements for that county."  Fla. Stat. § 98.075(8)(b).

## FLORIDA'S REMOVAL OF SELF-IDENTIFIED NON-CITIZENS FROM ITS VOTER DATABASE

36.    On information and belief, in late 2011 and early 2012, Florida Secretary of State Ken Detzner discovered that thousands of individuals who appeared as registered voters in the State's voter registration Database previously had declared to other State agencies—often in sworn statements or declarations—that they were not U.S. citizens.

37.    Secretary Detzner reasonably concluded that there was a substantial possibility that a substantial portion of the Self-Identified Non-Citizens were not presently U.S. citizens, and therefore did not satisfy the constitutional and statutory qualifications for voting in Florida.

38.    Federal law provides that USCIS "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

39.     On information and belief, pursuant to § 1373(c), Secretary Detzner sent numerous requests to USCIS, asking it to confirm the citizenship status of the Self-Identified Non-Citizens.  USCIS, however, refused to provide any information regarding the citizenship status of any of the individuals comprising that group.

40.     On information and belief, Secretary Detzner and other personnel of the Florida Department of State also reviewed other state records concerning the Self-Identified Non-Citizens, to the extent permitted by Florida law, in an attempt to confirm their citizenship status.  When they discovered state records confirming that one of the Self-Identified Non-Citizens was, in fact, a U.S. citizen, they removed that person from the list of possible non-citizens.

41.     As widely circulated in news reports, having repeatedly failed to receive any information from USCIS, and having exhausted all other reasonable means at his disposal of confirming the citizenship status of the Self-Identified Non-Citizens, Secretary Detzner provided the names of the Self-Identified Non-Citizens in each county to the Supervisor of Elections for that county, explaining that there was reason to believe that those individuals might not be U.S. citizens.

42.     Having obtained information suggesting that certain registered voters in their counties might not be constitutionally or statutorily eligible to vote, county Supervisors of Election were statutorily obligated to investigate the need to engage in a "[l]ist maintenance activity" pursuant to Fla. Stat. § 98.075.

43.     On information and belief, many Supervisors initiated the Potentially Unqualified Voter Removal Process under Fla. Stat. § 98.075(7) by sending a letter to each of the Self-Identified Non-Citizens in their county.  The letters generally:

a.     notified each Self-Identified Non-Citizen that the Supervisor had received information from the State of Florida suggesting that he is not, in fact, a U.S. citizen and therefore is not a qualified voter;

b.     notified the recipient that he could agree or disagree with this information;

c.     informed the recipient that, if he wishes, he may request an evidentiary hearing on the matter; and

d.     directed the recipient to return an enclosed form within 30 days, indicating whether he is a U.S. citizen, and to include documentation confirming his citizenship.

44.     On information and belief, a substantial number of Self-Identified Non-Citizens across Florida admitted that they are not, in fact, U.S. citizens, and therefore are not qualified voters.  Recent reports have stated that at least 100 persons who are not U.S. citizens were nonetheless registered to vote in Florida and have since been removed from the voter rolls as a result of the information provided by the Secretary of State to Supervisors of Election in certain counties.

45.     On information and belief, a substantial number of Self-Identified Non-Citizens returned proof of their U.S. citizenship to their county Supervisors of Election,

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

and those county Supervisors will not remove them from the Database of registered voters.

46.     On information and belief, a substantial number of Self-Identified Non-Citizens are not, in fact, U.S. citizens, and will either ignore, or fail to provide any documentary evidence in response to, this notice.

47.     The NVRA provides that a state must complete "any *program* the purpose of which is to systematically remove the names of ineligible voters" from the Database "not later than 90 days prior" to a federal election.  42 U.S.C. § 1973gg-6(c)(2)(A) (emphasis added).  The State of Florida has faithfully implemented this provision by requiring any Change-of-Address Programs to be completed within 90 days of any federal election.  Fla. Stat. § 98.065(5).  The State has not applied this deadline to "[l]ist maintenance activities," however.  Rather, the State allows a Supervisor to attempt to identify and remove from the Database anyone who has never been constitutionally or statutorily eligible to be a Florida voter, yet were erroneously registered to vote, even within 90 days of a federal election.  *Id*.

48.     The U.S. Department of Justice has sued the State of Florida and Secretary Detzner, alleging that they are violating the NVRA's 90-day cutoff by attempting to confirm the citizenship of Self-Identified Non-Citizens, and remove them from the Database, within 90 days of a primary election.  Compl., D.E. #2, ¶ 25.  The Department of Justice also contends that the process the Defendants are using is "inaccurate and unreliable."  *Id*. ¶ 26.

49.     The NVRA does not prohibit county Supervisors from asking the Self-Identified Non-Citizens who appear as registered voters in the Database to confirm their citizenship status, or from removing people from the Database who are not, in fact, U.S. citizens, for the following independently sufficient reasons:

a.     As an initial matter, as noted earlier, the NVRA regulates involuntary removal from the Database only when it is based on a change in circumstance following the person's registration, including conviction of a crime, declaration of mental incompetency, death, or a move to a different residence.  42 U.S.C. § 1973gg-6(a)(3)-(4).  The NVRA does not purport to regulate or prohibit the removal of records of people who never were qualified to vote, and who were added to the Database erroneously.  Thus, the 90-day exclusion period does not apply here.

b.     The Department of Justice based its entire argument on the fact that the NVRA does not expressly identify "non-citizens" as a group that may be removed from the Database within 90 days of a federal election.  *See* 42 U.S.C. § 1973gg-6(a)(3)(A)-(B), (a)(4)(A), (c)(2)(B)(i).  Read literally, however, those provisions do not authorize the removal of non-citizens from the Database at all, under any circumstances.  Because that would be an absurd construction of the statute flatly at odds with congressional intent, this Court should construe § 1973gg-6(a)(3) as implicitly allowing the removal of non-citizens.

c.     The NVRA expressly distinguishes, on multiple occasions, between "***programs***" and "***activities***" designed to "ensur[e] the maintenance of an accurate and current voter registration list."  42 U.S.C. § 1973gg-6(b), (i)(1) (emphasis

added).  The statute's 90-day exclusion period, however, applies only to "***programs***" to "systematically remove the names of ineligible voters" from the Database.  42 U.S.C. § 1973gg-6(c)(2)(A) (emphasis added).  The NVRA recognizes only two types of such programs—those aimed at updating the Database based on people's deaths, *see* 42 U.S.C. § 1973gg-6(a)(4)(A), and those aimed at updating the Database based on people's changes in residence, *see* 42 U.S.C. § 1973gg-6(a)(4)(B).  Under both the NVRA and Florida law, the Defendants' efforts to identify and remove non-citizens from the Database are not "programs" that fall within § 1973gg-6(c)(2)(A)'s exclusion period, but rather are list maintenance "***activities***" that may be conducted at any time.  Fla. Stat. § 98.075 (emphasis added).

        d.      The NVRA's 90-day prohibition contains an exception, stating that it "shall not be construed to preclude . . . correction of registration records pursuant to this Act."  42 U.S.C. § 1973gg-6(c)(2)(B)(ii).  The Supervisors' activities fall within this exception, because they are attempting to correct any mistakes or inaccuracies that may exist in the registration records of the Self-Identified Non-Citizens regarding their citizenship.

        e.      Interpreting or applying the NVRA to prevent States from removing non-citizens from their voter registration rolls for a combined period of up to 180 days in every election year (when people are most likely to register to vote) would raise serious constitutional questions under Article I, § 2 and the Seventeenth Amendment of the U.S. Constitution.  Those provisions specify that the "electors in each state" for members of the U.S. House of Representatives and U.S. Senate "shall have the

qualifications requisite for electors of the most numerous branch of the state legislature." Thus, the Constitution expressly leaves it to the States to determine the qualifications of electors for Congress.   Pursuant to this constitutional authority, the State of Florida reasonably has limited the franchise to U.S. citizens.   *See* FLA. CONST., art. VI, § 2; Fla. Stat. § 97.041(1)(a)(2).   The State of Florida and county Supervisors of Elections are attempting to implement and enforce those qualifications by removing non-citizens from the Database, after notice, an opportunity to prevent evidence of citizenship, and even an evidentiary hearing upon request.   The Department of Justice's interpretation and application of the NVRA unreasonably prevent the State of Florida and the Supervisors from implementing and enforcing those qualifications, affirmatively facilitate voting by unqualified individuals, and undermine Article I and the Seventeenth Amendment.

   f. The U.S. Supreme Court has held that a properly registered and duly qualified voter's fundamental constitutional right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."   *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see also Anderson v. United States*, 417 U.S. 211, 227 (1974); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).   Interpreting the NVRA to prevent the State or Supervisors from removing non-citizens from the Database would raise serious Due Process problems, because it would enable avowedly unqualified individuals to cast votes which would dilute, nullify, and effectively cancel out legally cast votes from qualified voters.

50.     All conditions precedent to the bringing of this action have been met, satisfied, or otherwise excused.

## COUNT I—DECLARATORY JUDGMENT

51.     Counter-Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 50 as if fully set forth herein.

52.     A live, concrete, real, immediate, and substantial case and controversy exists concerning whether the NVRA, 42 U.S.C. § 1973gg-6(b)(1), (c)(2)(A), prohibits Defendants from attempting to identify and remove non-citizens from the voter registration rolls.

53.     If Plaintiff is successful in stopping Defendants from identifying and removing non-citizens from the Database, those non-citizens will be able to vote, and likely will dilute, cancel out, or effectively nullify Intervenors' properly cast votes in the General Election.

WHEREFORE Counter-Plaintiffs respectfully request that this Court issue a declaratory judgment that 42 U.S.C. § 1973gg-6(b)(1) and (c)(2)(A) do not prohibit State or county personnel in non-covered jurisdictions from engaging in list maintenance activities aimed at removing non-citizens from the Database.

## COUNT II—DUE PROCESS (FUNDAMENTAL RIGHT TO VOTE)

54.     Counter-Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 50 as if fully set forth herein.

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

55. The Fifth Amendment's Due Process Clause protects Plaintiffs' fundamental right to vote. This right includes both the ability to cast a vote, and also to not have that vote improperly nullified, diluted, or cancelled out by improperly cast votes from unqualified persons, such as non-citizens.

56. The NVRA, 42 U.S.C. § 1973gg-6(b)(1), (c)(2)(A), as applied by the United States, violates Intervenors' fundamental right to vote under the Due Process Clause. The Government is attempting to allow non-citizens to remain in the voter registration database and cast votes in upcoming elections, including the November 6, 2012 general election, which will nullify, dilute, or effectively cancel out Intervenors' properly cast votes.

WHEREFORE Counter-Plaintiffs respectfully request that this Court issue a declaratory judgment that 42 U.S.C. § 1973gg-6(b)(1) and (c)(2)(A), as applied in the circumstances of this case, infringe upon Counter-Plaintiffs' fundamental right to vote in violation of the Due Process Clause, U.S. CONST., amend V.

## COUNT III—DUE PROCESS (EQUAL PROTECTION COMPONENT)

57. Counter-Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 50 as if fully set forth herein.

58. The Fifth Amendment's Due Process Clause contains an equal protection component comparable to the Equal Protection Clause of the Fourteenth Amendment, U.S. CONST., amend XIV, § 1.

59. The NVRA, as applied by the United States in this case, violates Intervenors' equal protection rights under the Due Process Clause, by allowing their

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

votes to be diluted, nullified, and effectively cancelled out by the votes of individuals who are not U.S. citizens, and therefore are not qualified to vote.

WHEREFORE Counter-Plaintiffs respectfully request that this Court issue a declaratory judgment that 42 U.S.C. § 1973gg-6(b)(1) and (c)(2)(A), as applied in the circumstances of this case, infringe Counter-Plaintiffs' equal protection rights under the Due Process Clause, U.S. CONST., amend V.

## PRAYER FOR RELIEF

**WHEREFORE,** Counter-Plaintiffs pray for judgment as follows:

1.      A declaration:

a.      that 42 U.S.C. § 1973gg-6(c)(2)(A) does not prohibit State or county personnel in non-covered jurisdictions from engaging in list maintenance activities aimed at removing non-citizens from the Database within 90 days of a federal election, and that such activities in this case are consistent with § 1973gg-6(b)(1); or, in the alternative,

b.      that 42 U.S.C. § 1973gg-6(b)(1) and (c)(2)(A) violate Intervenors' fundamental constitutional right to vote and equal protection rights under the Fifth Amendment's Due Process Clause, U.S. CONST., amend V;

2.      Attorneys' fees, expert fees, and other costs of suit pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A); and

3.      Any other relief this Court deems just and equitable under the circumstances.

Respectfully submitted,

s/ Raquel A. Rodriguez
Raquel A. Rodriguez
Fla. Bar No. 511439
rrodriguez@mcdonaldhopkins.com
David Axelman
Fla. Bar No. 90872
daxelman@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
Southeast Financial Center
200 South Biscayne Boulevard
Suite 3130
Miami, FL 33131-2344
Tel: (305) 704-3994
Fax: (305) 704-3999
*Attorneys for Intervenor Defendants-
Counter-Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 20, 2012, a true and correct copy of the foregoing was filed with the Clerk of Court via the CM/ECF system, causing a Notice of Electronic Filing to be sent to the following counsel of record: **John Albert Russ, IV**, **Elise Sandra Shore**, **Pamela Cothran Marsh**, and **Jenigh J. Garrett**, Counsel for Plaintiff United States of America; and **Ashley E. Davis** and **Daniel Elden Nordby**, Counsel for Defendant Ken Detzner.

s/ Raquel A. Rodriguez
Raquel A. Rodriguez