IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

_____
                                            )
THE UNITED STATES OF AMERICA,   )
                                            )
        *Plaintiff*,                      )
                                            )
    v.                                     )  Case No. 4:12cv285-RH/CAS
                                            )
STATE OF FLORIDA and KEN DETZNER, )
Secretary of State, in his official capacity,  )
                                            )
        *Defendants*.                  )
_____)

**MOTION FOR INTERVENTION OF JUDICIAL WATCH, INC. AND
TRUE THE VOTE; MEMORANDUM IN SUPPORT;
<u>AND REQUEST TO EXPEDITE</u>**

Judicial Watch, Inc., and True the Vote (collectively "Proposed Interveners") respectfully move this Court for leave to intervene pursuant to Federal Rule of Civil Procedure 24(a) and (b).[1] As grounds therefore, Proposed Interveners state as follows:

I.     <u>**INTRODUCTION**</u>.

In this case, Plaintiff asks the Court to enjoin the State of Florida from continuing its efforts to maintain the accuracy of its voter rolls as required by Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. §

---

[1] A proposed Answer in Intervention is attached hereto as Exhibit 1.

1

1973gg-6. Plaintiff seeks this relief on the grounds that the State of Florida's list maintenance efforts are too close in time to the August 14, 2012 primary and therefore are prohibited by NVRA. Proposed Interveners respectfully submit that Plaintiff is wrong.

Proposed Interveners seek to enter this lawsuit in order to demonstrate that, not only are the State of Florida's list maintenance activities valid, proper, and timely, but that they also are required under federal law. Intervention will ensure that the organizational interests of Proposed Intervener True the Vote and the rights and interest of the members of Proposed Intervener Judicial Watch, Inc., are adequately protected and preserved.

## II.     BACKGROUND.

Plaintiff filed its Complaint on June 12, 2012. In its Complaint, Plaintiff alleges that the State of Florida is violating the NVRA and asks for an injunction preventing what Plaintiff characterizes as "the systemic removal of registered voters within 90 days of all elections for Federal office" pursuant to certain "database matching procedures." Named as defendants in Plaintiff's Complaint are the State of Florida and Florida Secretary of State Ken Detzner, in his official capacity.

On June 15, 2012, Plaintiff filed a Motion for Temporary Restraining Order requesting that the Court temporarily halt the State of Florida's list maintenance

efforts – allegedly to preserve the status quo – even though Plaintiff cannot identify a single Florida voter who has actually been removed from the voter registration rolls.  By order dated June 19, 2012, the Court directed Defendants to file their response to Plaintiff's Motion for Temporary Restraining Order on or before June 25, 2012.

### III.   PROPOSED INTERVENERS.

Judicial Watch, Inc. ("Judicial Watch"), is a non-profit organization that seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law.  Judicial Watch seeks to intervene in this action on behalf of its members who are registered to vote in the State of Florida.

True the Vote is a non-profit organization that seeks to restore truth, faith, and integrity to local, state, and federal elections.  True the Vote seeks to intervene in this action in its individual, organizational capacity.

#### A.   Proposed Intervener Judicial Watch.

Judicial Watch is a membership organization.  A person becomes a member by making a financial contribution, in any amount, to Judicial Watch.  Members' financial contributions are by far the single most important source of income to Judicial Watch and provide the means for financing the activities of the organization.  As a direct benefit to its members, Judicial Watch regularly files lawsuits and involves itself in litigation against government agencies and

government officials in federal and state courts across the United States. Judicial Watch's litigation efforts form an integral part of its public interest mission. Furthermore, Judicial Watch's litigation provide a means for the organization's members to advance their collective views and protect their collective interests in promoting integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch has at least 18,728 members in the State of Florida. Each of these members made at least one financial contribution to Proposed Intervener Judicial Watch over the past two years, and thus helped to finance the activities of the organization during this time period. At least some of Judicial Watch's 18,728 members in the State of Florida are registered to vote in the State. These members have a substantial interest in the accuracy and currency of official lists of eligible voters in the State of Florida, as the accuracy and currency of these lists directly affects their right to vote.

Consistent with its mission and in order to protect the rights and interests of its registered voter members, Judicial Watch is engaged in an ongoing legal effort to ensure states and counties are performing their voter roll list maintenance requirements under federal law.[2] Also this year, Judicial Watch (along with co-

---

[2] *See 2012 Election Integrity Project: Judicial Watch Announces Legal Campaign to Force Clean Up of Voter Registration Rolls*, Feb. 9, 2012, available at http://www.judicialwatch.org/projects/2012-election-integrity-project/; *see also* Lise Olsen, *Conservative watchdog group questions counties with too many voters*, Houston

plaintiff True the Vote) filed a federal lawsuit against the State of Indiana for failure to comply with voter list maintenance provisions of the NVRA,[3] and filed a brief supporting the list maintenance efforts of the State of Tennessee after they were sued by a former Congressman.[4]

As a part of this effort, Judicial Watch sent a letter of inquiry to the State of Florida earlier this year to ensure it was complying with Section 8 of the NVRA.[5] The State of Florida responded by providing evidence that it was at least

---

Chronicle, April 8, 2012, available at http://www.chron.com/news/houston-texas/article/Conservative-watchdog-group-questions-counties-3467513.php; *see also* Sean O'Donogue, *Commission responds to threatened lawsuit*, Lincoln Journal, March 2012, available at http://lincolnjournalinc.com/commission-responds-to-threatened-lawsuit-p8065-1.htm.

[3] *Watchdog group sues Indiana over voter rolls*, Indianapolis Star, Jun. 11, 2012, available at http://www.indystar.com/article/20120611/NEWS05/206110354/Watchdog-group-sues-Indiana-over-voter-rolls.

[4] *Judicial Watch and Allied Educational Foundation Submit Amicus Curiae Brief in Support of Tennessee's Attempt to Remove Ineligible Voters from Voter Registration Lists*, June 13, 2012, available at http://www.judicialwatch.org/press-room/press-releases/judicial-watch-and-allied-educational-foundation-submit-amicus-curiae-brief-in-support-of-tennessees-attempt-to-remove-ineligible-voters-from-voter-registration-lists-2/.

[5] Letter from Thomas Fitton to Kurt Browning and Gisela Salas, February 6, 2012, available at http://www.scribd.com/JWatchDC/d/96425229-Florida-Inquiry-Letter-NVRA-FINAL.

attempting to comply with its Section 8 obligations.[6]  The relief now sought by Plaintiff would therefore undo the work that Judicial Watch has undertaken in the State of Florida and would cause direct injury to members of Judicial Watch who are registered to vote in Florida.  Preventing the State of Florida from conducting the challenged list maintenance efforts will undermine the confidence that Judicial Watch's registered voter members have in the integrity of the electoral process and the effectiveness of their vote.  If Plaintiff were to succeed in stopping the challenged list maintenance efforts, Judicial Watch's registered voter members may have their votes cancelled out or diluted by unlawful ballots cast in the names of unlawfully present aliens.

At least 473 members of Judicial Watch who are registered to vote in Florida have communicated directly with Judicial Watch and requested that it take action to protect their interests from Plaintiff's misguided efforts to stop the State of Florida's list maintenance efforts.  It is unlikely that any individual Judicial Watch member would have the ability or the resources to take action to protect their individual interests absent collective action by Judicial Watch.

---

[6] Letter from Maria Matthews to Thomas Fitton, April 4, 2012, available at http://www.scribd.com/JWatchDC/d/96425227-Florida-SoS-Letter-Re-NVRA.

### B. Proposed Intervener True the Vote.

As an integral part of its public interest mission to ensure the integrity of the nation's electoral system,[7] Proposed Intervener True the Vote obtains and examines official lists of eligible voters and other voter registration data from states, counties, and localities across the United States, including the State of Florida, to carry out its various programs. For one such program, Proposed Intervener True the Vote reviews and analyzes official lists of eligible voters and other voter registration data in order to verify that such lists and data are as accurate and current as possible.

Specifically, True the Vote uses trained volunteers to review official lists of eligible voters and voter registration data and to compare these lists and data to other publically available data to identify possible inaccuracies and deficiencies. Registrations that appear to be duplicates or registrations of persons who are deceased, have relocated, or otherwise are ineligible to vote in a particular jurisdiction are flagged and citizen complaints are filed with the appropriate elections officials. This particular program is among the largest, if not the largest, of all of True the Vote's various programs and is also an integral part of True the Vote's public interest mission. The program builds on and supplements, but

---

[7] *See* True the Vote Mission Statement, available at http://truethevote.org/about/.

cannot duplicate or replace, the list maintenance programs that States are required to perform under federal voter registration laws.

True the Vote has recruited and trained volunteers to analyze and verify the accuracy and currency of official lists of eligible voters and other voter registration data for the State of Florida for the November 2012 election and plans to recruit and train additional volunteers for this effort. True the Vote's efforts to analyze and verify the accuracy and currency of official lists of eligible voters and other voter registration data, including official lists and other voter registration data in the State of Florida, are dependent in substantial part on States' fulfilling their voter list maintenance obligations under federal voter registration laws. In order to protect its organizational interests in this regard, earlier this month True the Vote (along with co-plaintiff Judicial Watch) filed a federal lawsuit against the State of Indiana for failure to comply with voter list maintenance provisions of the NVRA.[8]

If States are prevented from conducting voter list maintenance programs, then not only are the lists and voter registration data obtained and examined by True the Vote inaccurate and unreliable, but True the Vote is not able to use its limited resources to make official lists of eligible voters and other voter

---

[8] *State sued over 2010 voter rolls*, Indianapolis Star, Jun. 12, 2012, available at http://www.indystar.com/article/20120612/LOCAL/206120328/State-sued-over-2010-voter-rolls.

registration data as accurate and current as possible. Instead, True the Vote can only hope to make up for a small part of the State's voter list maintenance efforts.

If successful, Plaintiff's attempt to stop the challenged list maintenance efforts will impair the ability of True the Vote to carry out its public interest mission. True the Vote will not be able to complete its work of ensuring a high degree of accuracy and currency in the official lists of eligible voters and other voter registration data in the State of Florida if the State of Florida is prevented from carrying out the challenged list maintenance effort. Accordingly, if Plaintiff succeeds, True the Vote will be injured because its ability to carry out is public interest mission will be impaired.

**IV.    PROPOSED INTERVENERS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

The U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") has held that "Rule 24 should be liberally construed with all doubts resolved in favor of the proposed intervenor." *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (11th Cir. 2008); *see also Meek v. Metropolitan Dade County, Florida*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed interveners because it allows the court to resolve all related disputes in a single action."). Allowing parties to intervene serves the interests of judicial efficiency, since intervention allows courts to resolve related disputes in a single action. *See*

*Federal Savings and Loan v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

To intervene as a matter of right, Proposed Interveners must show that (1) their request to intervene is timely; (2) they have a protectable interest in the subject of the action; (3) they are so situated that the disposition of the action may impede or impair their ability to protect those interests; and (4) their interests may not be represented adequately by the existing parties to the suit. *See e.g. Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). Proposed Interveners easily meet these criteria.

### A.  Intervention is Timely.

Plaintiff filed its Complaint on June 12, 2012 and its Motion for Temporary Restraining Order on June 15, 2012. This motion to intervene is being submitted only two weeks after Plaintiff initiated this action. Accordingly, there is no delay and hence no prejudice to the existing parties. *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1260 (11th Cir. 2002) (intervention request filed after six months was timely); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (seven month delay not untimely). However, Proposed Interveners *would* be prejudiced if they are not allowed to intervene, as they would be left without a reasonable opportunity to protect their interests. *Walker v. The Jim Dandy Company*, 747 F.2d 1360, 1365 (11th Cir. 1984).

### B. Proposed Interveners Have a Direct and Protectable Interest.

If Florida is unable to ensure its voter rolls are accurate pursuant to federal law, Judicial Watch's registered voter members' confidence in the integrity of the election process will be undermined and True the Vote's attempts to make the voter rolls of the State of Florida accurate and current as possible will be impaired.

The organizational injury True the Vote may suffer is direct and protectable:

> An independent basis for organizational standing exists when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d at 1353-54 (11th Cir. 2005) (an organization conducting voter registration has a protected interest under the NVRA in having individuals it registers be processed properly and a state's actions negatively impacting that interest confer standing on the organization to bring suit on its own behalf).

*Common Cause of Colorado, v. Buescher*, 750 F. Supp.2d 1259, 1269 (D. Colo. 2010). Furthermore, an organization has standing to sue on its own behalf if "illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Florida State Conference of NAACP v. Browning*, 522 F 3d 1153, 1165 (11th Cir. 2008), *citing Havens v. Coleman*, 455 US 363, 379 (1982).

Judicial Watch may intervene on behalf of its members to protect their voting rights and interests because such an action is core to Judicial Watch's

public interest mission. *Florida State Conference of NAACP*, 522 F.3d at 1161. The injury to Judicial Watch members' confidence in the integrity of Florida's federal election is direct and protectable: "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process. As the Carter-Baker Report observed, the 'electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters.'" *Crawford, v. Marion County Election Bd*., 553 U.S. 181, 197 (2008).

Furthermore, Judicial Watch's members also have a direct and protectable interest in ensuring their votes are not diluted as a result of Plaintiff's actions:

> Further, the injury here alleged, is not the State's failure to count any one person's vote, but the higher probability of that vote not being counted as a result of the voting systems used, *i.e.*, vote dilution. That injury is both provable and traceable to Defendants' actions given the facts alleged. Vote dilution as "directly related to voting, the most basic of political rights, is sufficiently concrete and specific."

*Black v. McGuffage*, 209 F. Supp. 2d 889, 895 (ND Ill. March 29, 2002) *quoting FEC v. Akins,* 524 U.S. 11, 25 (1998).

### C. The Disposition in This Case Will Directly Affect Proposed Interveners.

As described above in Sections III and IV.B., an unfavorable disposition in this action will directly harm True the Vote and the registered voter members of Judicial Watch. Especially in light of the proximity of the November 2012

election, an adverse Court ruling will have a direct impact on True the Vote and the registered voter members of Judicial Watch, and Proposed Interveners therefore have a "direct, substantial and legally protected interest" in the subject matter of this litigation. *Georgia v. U.S. Army Corps*, 302 F.3d at 1250.

### D. Adequacy of Representation.

The burden under this prong has been described as "minimal," as a party seeking to intervene needs to show only that representation of his interest may be inadequate. *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999), quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972). In this case, Defendants have an interest in ensuring that the State of Florida is complying with Section 8 of the NVRA, while Proposed Interveners have an interest in ensuring they can satisfy their public interest mission to make voter rolls as accurate as possible, in the case of True the Vote, and ensuring their members have confidence in the legitimacy of the November 2012 election, in the case of Judicial Watch.

### V. IN THE ALTERNATIVE, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

Fed. R. Civ. P. 24(b)(1) governs permissive intervention and provides:

On timely motion, the Court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.

As the Eleventh Circuit has declared, "Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Georgia v. Army Corps*, 302 F.3d at 1250, *citing Walker v. Jim Dandy*, 747 F.2d at 1365. As demonstrated above, this test is satisfied here.

Rule 24(b)(3) also requires the Court to consider whether permissive intervention will cause undue delay or prejudice the adjudication of the rights of the existing parties. As described above, in this instance no prejudice or delay will result from intervention. Proposed Interveners intend to comply with briefing schedule already in place in this matter, and their participation will not affect the scheduling of this case in any way. Thus, at a minimum, Proposed Interveners respectfully request that they be granted permissive intervention.

## VI. PROPOSED INTERVENERS REQUEST EXPEDITED CONSIDERATION OF THIS MOTION.

Proposed Interveners respectfully request expedited consideration of this motion. Proposed Interveners seek to ensure their interests are presented and preserved in a timely fashion and, to this end, request that the Court consider their motion at the same time that it considers Plaintiff's Motion for a Temporary Restraining Order. Proposed Interveners also request that this Court set the

following expedited briefing schedule for their motion:  opposition memoranda, if any, to be filed no later than 5 p.m. on July 3, 2012.

## VII.     CERTIFICATION PURSUANT TO LOCAL RULE 7.1(B).

The undersigned counsel certify that Counsel for Defendants have indicated that Defendants do not oppose the relief sought herein.  In addition, undersigned counsel certify that they have attempted to reach counsel for Plaintiff and left messages informing them of this motion, however, counsel have not yet obtained consent.

## VIII.    CONCLUSION.

For the forgoing reasons, Proposed Interveners respectfully request that this Court grant them leave to intervene in this action.

Dated:  June 26, 2012                                    Respectfully submitted,

*Paul J. Orfanedes*
Paul J. Orfanedes
*Petition for Admission* to Be Filed
Chris Fedeli
*Petition for Admission* Pending

JUDICIAL WATCH, INC.
425 Third Street S.W., Ste. 800
Washington, DC 20024
Tel: (202) 646-5172
Fax: (202) 646-5199
Email:
porfanedes@judicialwatch.org
cfedeli@judicialwatch.org

15

        */s/  Christopher B. Lunny*
        Christopher B. Lunny
        Fla. Bar No. 0008982
        Harry O. Thomas
        Fla. Bar No. 195097

        RADEY THOMAS YON & CLARK
        301 South Bronough Street
        Suite 200
        Tallahassee, FL 32301
        Tel: (850) 425-6654
        Fax: (850) 425-6694
        Email:
        clunny@radeylaw.com
        hthomas@radeylaw.com

        *Attorneys for Proposed Interveners*

*Of Counsel:*

J. Christian Adams
Election Law Center, PLLC
300 N. Washington Street, Ste. 405
Alexandria, VA 22314