# Exhibit 3



RECEIVED BY DHS EXEC S

2012 JUN 19 PM 5: 37

# FLORIDA DEPARTMENT of STATE

**RICK SCOTT**
Governor

**KEN DETZNER**
Secretary of State

June 19, 2012

The Honorable Janet Napolitano
U.S. Department of Homeland Security
Washington, D.C. 20528

Dear Secretary Napolitano:

I write in response to a June 12 letter received from Alejandro Mayorkas, Director of U.S Citizenship and Immigration Services (USCIS), regarding the longstanding request by the Florida Department of State (FDOS) for access to the Systematic Alien Verification for Entitlements Program (SAVE Program). The USCIS letter confirms our understanding that the SAVE Program can be used for voter registration purposes and would allow Florida to verify the citizenship status of naturalized U.S. citizens and the immigration status of defined categories of non-citizens.

The June 12 letter also states that USCIS is willing to work with my Department to "achieve Florida's participation in the SAVE Program." We accept this offer and respectfully reiterate our request for immediate access to the SAVE Program.

Unfortunately, the USCIS letter indicates a lack of familiarity with Florida's procedures to identify potential non-citizens on its voter registration rolls, FDOS's intended use of the SAVE Program, and—most significantly—the data fields that FDOS offered to provide to USCIS, several months ago, to verify the current legal status of potential non-citizens. As previously stated, **the Florida Department of State has access to alien registration numbers and other immigration-related documents for many potential non-citizens on its voter rolls and remains willing to provide this information to USCIS for verification purposes.**

Other information regarding Florida's efforts to identify potential non-citizens on its voter rolls, much of which has been previously provided or explained to USCIS, is summarized below.

### Automated Match Process

FDOS has an obligation under both state and federal law to protect the integrity of the electoral process by identifying ineligible registered voters and otherwise ensuring the accuracy of Florida's voter registration system. In the Spring of 2011, FDOS was informed that Florida's Department of Highway Safety and Motor Vehicles (DHSMV) maintains a record of citizenship/immigration-status information for individuals who have obtained a state driver license or identification card. FDOS believed DHSMV's legal-status information could be helpful in identifying non-citizens who have registered to vote.




R. A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399
Telephone: (850) 245-6500 • Facsimile: (850) 245-6125  www.dos.state.fl.us
*Commemorating 500 years of Florida history*  www.fla500.com

FDOS worked with DHSMV to identify potential non-citizens who were registered to vote by identifying records common to DHSMV's Drivers and Vehicle Information Database (DAVID) and the Florida Voter Registration System (FVRS). The matching criteria used for this initial, automated match were (1) exact match on a driver's license number; (2) exact match on a nine-digit social security number; or (3) exact match on a generated driver's license number (derived from name (first and last), date of birth, and gender as contained in FVRS) with existing driver's licenses in DAVID. This final matching criterion was used because there are registered voters for whom there is no driver's license number or social security number, as they registered prior to that identification requirement.

The return file only contained information on automated matches in which the DAVID system indicated that the person was a non-citizen based on documents produced to obtain a driver's license or state ID card. DHSMV's automated match process was able to identify roughly 11 million common records, of which approximately 180,000 were identified by DHSMV as potential non-citizens.

### Secondary Review of Automated Matches

Following the automated match process, the Florida Department of State manually reviews each automated match. The two-step process involves a verification of both identity and legal status. First, the Florida Department of State verifies that the registered voter is the same person as the driver licensee by reviewing the name and date of birth under the driver's license and/or social security number, along with a review of other common fields such as address and signature comparison. Identification must be verified on a minimum of three secondary match criteria (first/last name, date of birth, and driver's license number and/or social security number).

If the identity is verified, the Department of State verifies that the legal status information in DAVID indicates "non-citizen" by reviewing the country/state of birth, the alien registration number or legal permanent resident number (if available), documentation indicating legal status (citizen or non-citizen), and reconciling any inconsistencies in DAVID between data fields and available scanned documentation. If DAVID has available documentation as to legal status, the match record is deemed "REAL ID compliant."

Only a record that is verified as to both identity and non-citizen legal status is deemed a "potential ineligibility" match, valid for subsequent determination and possible removal by county Supervisors of Elections under the process prescribed by section 98.075(7), Florida Statutes.

FDOS soon recognized that the most significant limitation in its process was outdated citizenship-status information contained in a person's DAVID record, which is only as current as the person's last interaction with DHSMV. To obtain the most current and reliable information on a person's citizenship status, narrow the list of potential non-citizens on Florida's voter rolls, and ensure that persons who have become citizens since their last contact with DHSMV would not be inconvenienced, FDOS would need direct access to the SAVE Program. FDOS first contacted USCIS regarding access to the SAVE Program on August 1, 2011.

In April 2012, at the urging of several members of the Executive Board of the Florida State Association of Supervisors of Elections, FDOS forwarded a sample of roughly 2,700 persons identified as potential non-citizens to Supervisors of Elections for their additional review. Because DHS has blocked Florida's access to the SAVE Program, FDOS has been unable to send additional information to Supervisors of Elections since April 30, 2012.

## Notice, Hearing, and Removal Procedures

After receiving information that a registered voter may be ineligible for any reason, Florida law (§ 98.075(7), Florida Statutes) requires a Supervisor of Elections to take the following actions *before* any person's name may be considered for removal from the Florida Voter Registration System:

1. **Initiate notice** to the registered voter of his or her potential ineligibility by certified mail, return receipt requested (or by some other means that allows verification of receipt). The notice must include (by law):
    - A statement of **basis for ineligibility**
    - A copy of any **supporting documentation**
    - A statement that **failure to respond** within 30 days may result in removal from rolls
    - A **return form** that requires voter to admit or deny accuracy of information
    - A statement that a person denying ineligibility has a **right to a hearing**
    - Contact information for the Supervisor of Elections
    - Instructions for seeking restoration of civil rights (if applicable)

2. **Allow voter 30 days to respond** (if the Supervisor of Elections receives verification that the notice was delivered).

3. If the mailed notice is returned as undeliverable, **publish notice** in a newspaper of general circulation in the county where the voter was last registered.

4. **Allow voter 30 days to respond** after newspaper publication.

5. **Provide a hearing** if requested by a registered voter denying the accuracy of the information underlying the potential ineligibility.

6. **Determine eligibility** of person based on a preponderance of the information and documentation before the Supervisor of Elections regarding eligibility or ineligibility.

    **If a registered voter identified as a potential non-citizen** has become a citizen at any time before the Supervisor's determination of eligibility, the voter shall be deemed eligible for purposes of continuing registration and <u>should not</u> be removed from the rolls.

8. **If determined ineligible, remove voter's name** from FVRS.

9. **Send notice** to the voter regarding the Supervisor's determination and action.

The United States Department of Justice has granted preclearance to Florida's notice, hearing, and removal process outlined above. Florida law also provides a right to appeal the Supervisor's determination of ineligibility to a court. **Any voter whose name has been removed from the rolls can, at any time, present evidence that removal was erroneous and be restored to the rolls without having to re-register, even if the registration period for that election has closed.** And even on Election Day itself, any person who has been removed from the voter rolls is entitled to cast a provisional ballot that **will be counted** if a preponderance of the evidence shows the person was eligible.

## Florida Has Offered to Provide the Unique Identifiers Required by the SAVE Program

According to the June 12 letter, DHS is prepared to grant Florida access to the SAVE Program for voter registration purposes provided Florida complies with the SAVE Program's "mandates" and "conditions." For nearly a year, Florida has been prepared to comply with all of the generally applicable

conditions of the SAVE Program. Nonetheless, USCIS has been generally non-responsive and has failed to specifically identify any conditions that Florida has not satisfied. These delays have significantly prejudiced Florida's ability to fulfill its legal obligation to verify that its voter registration rolls are current and accurate.

The June 12 letter identifies only a single condition that Florida has allegedly failed to meet. USCIS claims that Florida "has not been able to provide the required information to USCIS" needed to verify current status—specifically, an alien registration number or other "unique identifiers" found on immigration documents. This is simply incorrect. As explained to USCIS several months ago, the Florida Department of State has access to the alien registration numbers and immigration-related documents contained in DHSMV's database. Indeed, DHSMV itself is a registered user of the SAVE Program and uses legal status information to verify eligibility for state driver's licenses. If these "unique identifiers" are sufficient for DHSMV's use of the SAVE Program, the same information should be sufficient for FDOS's use of the SAVE Program.

Moreover, by stating that the SAVE Program "does not allow verification based on name and/or date of birth alone," USCIS implies that Florida has offered only those two data fields. This, too, is simply false. In addition to the alien registration numbers and other identifiers obtained from DHSMV, Florida has specifically offered to provide the following identifying information to USCIS for verification of legal status:

- first name;
- middle name;
- last name;
- date of birth;
- personal identifying number (Florida driver's license number, Florida identification card number, or last 4 digits of the Social Security Number);
- race (where available);
- state or country of birth (where available);
- telephone number (where available);
- residential address (Street, Apt/Lot/Unit, City, County, ZIP code);
- mailing address (including Street/P.O. Box, City, State, ZIP code); and
- signature.

FDOS has gone well beyond offering only "name and/or date of birth" to USCIS for verification of the legal status of potential non-citizens. Indeed, FDOS has offered to provide the very information the USCIS letter now states is sufficient.

### FDOS's Intended Use of the SAVE Program

If provided access to the SAVE Program, FDOS would use the immigration and citizenship-status information contained in the database as an additional check in its secondary review of the records identified through the automated match process. After manually confirming the automated identity match, FDOS would submit any alien registration number or other "unique identifier" contained on immigration-related documents obtained from DHSMV to the SAVE Program.

If the SAVE Program indicates that the registered voter associated with the alien registration number remains a non-citizen, that information could, consistent with law, be provided to Supervisors of Elections to initiate the notice, hearing, and removal procedures outlined above. If the SAVE Program indicates that the non-citizen has since become a United States citizen, the updated legal-status information would simply be transmitted to DHSMV and—clearly—no action would be taken to remove the voter from the FVRS.

## Conclusion

Access to the SAVE Program is critical to ensuring that Florida can uphold its legal obligation to maintain a current and accurate voter registration system, while at the same time minimizing any inconvenience to eligible voters. I respectfully reiterate Florida's request for immediate access to the SAVE Program and a response to this letter no later than June 26, 2012.

Sincerely,

*[signature]*

Ken Detzner
Secretary of State

cc: Alejandro Mayorkas