IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF FLORIDA; KEN DETZNER,<br>Secretary of State, in his official capacity,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.<br>)   4:12-CV-00285-RH-CAS<br>)<br>)<br>)<br>)<br>) |

## UNITED STATES' MEMORANDUM IN OPPOSITION AND RESPONSE TO JUDICIAL WATCH AND TRUE THE VOTE'S MOTION FOR INTERVENTION AS OF RIGHT AND PERMISSIVELY

The United States respectfully submits the following response to the June 26, 2012

Motion to Intervene as Defendants filed by Judicial Watch, Inc. and True the Vote (ECF No. 28).

The United States opposes intervention of Proposed Intervenors Judicial Watch and True the

Vote and respectfully asks the Court to deny the Proposed Intervenors' motion to intervene.

Proposed Intervenors have failed to establish sufficient grounds for intervention, as they present

a generalized interest in preventing the United States from obtaining the remedy it seeks and lack

standing to participate in the case. *See, e.g., Lance v. Coffman*, 549 U.S. 437, 442 (2007)

(finding lack of standing where party alleged "an undifferentiated, generalized grievance about

the conduct of government"); *see also Judicial Watch v. FEC*, 180 F.3d 277, 278 (D.C. Cir.

1999) (finding that a "generalized 'interest in the enforcement of the law'" does not support

standing) (quoting *Common Cause v. FEC*, 180 F.3d 413, 418 (D.C. Cir. 1997)). Moreover,

permitting intervention would likely delay a swift resolution of this case, which turns on the

meaning and application of Section 8 of the National Voter Registration Act ("NVRA") to the

State of Florida's list maintenance activities.

## I.     FACTUAL BACKGROUND

The United States filed this action to enjoin Florida's systematic removal of registered

voters in violation of Section 8 of the National Voter Registration Act ("NVRA"). The United

States alleges that the voter verification program initiated by Florida, which compares

information in the Florida Department of Highway Safety and Motor Vehicles ("DHSMV")

database to the list of registered voters in the Florida Voter Registration System ("FVRS"),

violates Section 8(c)(2)(A) of the NVRA, *see* 42 U.S.C. § 1973gg-6(c)(2)(A), which requires

jurisdictions to complete systematic removal programs of ineligible voters within 90 days of a

federal election. Complaint ¶ 25 (ECF. No.2). The United States also alleges that Florida's

verification program is inaccurate and unreliable, in violation of Section 8(b)(1) of the NVRA,

which requires that any such program be, *inter alia*, "uniform" and "nondiscriminatory." 42

U.S.C. § 1973gg-6(b)(1); Complaint ¶ 26 (ECF No. 2).

On June 26, 2012, Proposed Intervenors filed the instant motion.   Proposed Intervenor

Judicial Watch seeks to intervene on behalf of "its members who are registered to vote in the

State of Florida" and Proposed Intervenor True the Vote seeks to intervene in "its individual,

organizational capacity." ECF No. 28. Proposed Intervenors assert limited facts in their motion

for permissive intervention and assert no additional claims in this action. ECF. No. 28-1.

On June 27, 2012, this Court heard Plaintiff's Motion for a Temporary Restraining Order.

*See United States v. Florida*, No. 4:12-cv-285, 2012 WL 2457506 (N.D. Fla. 2012). The Court

declined to grant the United States' motion, concluding, "There is no need for an injunction

prohibiting the Secretary from continuing with a program he has unequivocally said he will not

continue."[1] *Id.* at 4. The Court explained that the doctrine of voluntary cessation created a

rebuttable presumption that the challenged conduct—in this case, the state's use of an unreliable,

inaccurate list of alleged non-citizens for purposes of identifying and removing from the voter

rolls—will not recur. *Id.* at 4 (citing *Bankshot Billiards, Inc. v. City of Ocala*, 634 Fl.3d 1340,

1351-52 (11th Cir. 2011)). This Court's decision recognized that the State's voter verification

program had "major flaws," including the fact that it "identified many properly registered

citizens as potential noncitizens." *Id.* at 1, 4. This Court further stated that the voter verification

program was likely to have a discriminatory impact on newly naturalized registered citizen

voters and noted that Florida's voter verification program "probably ran afoul" of NVRA Section

8(b), 42 U.S.C. § 1973gg-6(b)(1), which requires state voter list maintenance programs to be

"uniform" and "nondiscriminatory." *Id.* at 4.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 24(a)(2), a movant who seeks to intervene as of

right must show that: (1) the application to intervene is timely; (2) he has an interest relating to

the property or transaction which is the subject of the action; (3) he is so situated that disposition

of the action, as a practical matter, may impede or impair his ability to protect that interest; and

(4) his interest is represented inadequately by the existing parties to the suit. Fed. R. Civ. P.

24(a)(2). *See Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366-67 (11th Cir.

1982) (affirming district court's denial of intervention when an intervenor did not assert a

particularized interest and had the same objective as parties); *United States v. Georgia*, 19 F.3d

1388, 1394 (11th Cir. 1994) (affirming denial of intervention when intervenors' claimed interests

---

[1]   The United States notes that Florida recently announced it will be releasing its list of 180,000
alleged non-citizen voters. *See* Steve Bousquet, *State to Release Larger Potential Noncitizen
Voter List*, MIAMI HERALD (JUNE 10, 2012), *available at:* www.miamiherald.com/
2012/07/10/2890164/state-to-release-larger-potential, attached as Exhibit 1.

were speculative and not legally cognizable).  Failure to satisfy any prong of the intervention of

right inquiry is grounds for denying intervention.  *See, e.g., Sierra Club, Inc. v. Leavitt*, 488 F.3d

904, 910 (11th Cir. 2007) (denying intervention for failing to meet only one of the four

requirements); *Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir. 1984) ("If a would-be intervenor

fails to meet any one of these requirements then it cannot intervene as a matter of right").

Any Proposed Intervenor who seeks to participate in an action must have a "significantly

protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), and Article III

standing is relevant to defining the type of interest the intervenor must assert.  *Chiles v.

Thornburgh*, 865 F.2d 1197, 1212-13 (11th Cir. 1989); *Johnson v. Mortham*, 915 F. Supp 1529,

1535, n.6, 1538 (11th Cir. 1996); *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1333 (11th

Cir. 2007) (per curiam).  An organization that seeks associational standing on behalf of its

members must show that:  (1) its members would otherwise have standing to litigate in their own

right, (2) the interests that the organization seeks to protect are germane to its purpose, and (3)

neither the claim nor relief requested require participation of individual members.  *Nat'l Alliance

for the Mentally Ill v. Bd. of County Comm'rs*, 376 F.3d 1292, 1296 (11th Cir. Fla. 2004) (citing

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC),Inc.*, 528 U.S. 167, 181 (2000)).  When

an organization seeks standing on its own behalf, it must establish that the organization suffers or

will suffer an injury in fact that is concrete, particularized, and actual or imminent; that the injury

is traceable to the challenged action; and that the injury will likely be redressed by a favorable

decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Like individuals,

therefore, organizations must allege more than a generalized grievance to establish sufficient

grounds for intervention.  *See Dillard*, 495 F.3d at1333 ("generalized grievances asserted by

[individual] Intervenors . . .  do not assert a concrete and personalized injury"); *ManaSota-88,*

*Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. Fla. 1990) (generalized grievances asserted by an organizational intervenor did not "impart . . . the kind of legally protectable interest in the . . . litigation necessary to support intervention as of right.").

A movant may also seek to intervene permissively under Federal Rule of Civil Procedure 24(b)(1). To establish sufficient grounds for permissive intervention, a movant must show: (1) that its application to intervene is timely and (2) that it has a conditional right to intervene by a federal statute or a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1). District courts have broad discretion to refuse permissive intervention and determinations must be guided by considerations of undue delay or prejudice to the adjudication of the rights of the existing parties. Fed. R. Civ. P. 24(b)(3). *See Worlds v. Dep't of Health & Rehab. Servs. State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991). To that end, standing considerations assist district courts in determining whether permissive intervention is appropriate and whether an Intervenor's interest would unduly delay adjudication. *Clark v. Putnam Cnty.*, 168 F.3d at 463; *see also Dillard*, 495 F.3d at 1340 (denying intervention in part because movants were "unable to establish individualized standing."). Courts must also consider whether a proposed permissive intervention may fail to serve the interests of judicial economy. *Johnson*, 915 F. Supp at 1535; *Meek v. Metro. Dade County*, 985 F.2d 1471, 1477 (11th Cir. 1993). Whether a movant-intervenor seeks intervention by right or permissively, the movant must satisfy the notice and pleading requirements of Fed. R. Civ. P. 24(c).

## III.   ARGUMENT

The applicant organizations, which claim members who are registered to vote in Florida and an interest in "truth, faith, and integrity [in] local, state, and federal elections," ECF No. 28 at 3, cannot satisfy the requirements for intervention as of right or permissive intervention. At

most, Proposed Intervenors have articulated a general interest in influencing the Court's

determination of this case that could be fully served by participating as *amici curiae*. The United

States does not oppose Proposed Intervenors participating through *amici* filings. However, the

United States opposes Proposed Intervenors' attempt to participate as parties, because they have

not alleged a particularized grievance sufficient to establish an interest in this action and fail to

satisfy the requirements for intervention as of right or permissively.

A.   **Proposed Intervenors Fail to Assert a Particularized Interest That Would Be
     Impeded or Impaired by this Action**

An interest that satisfies the requirements of Rule 24(a)(2) must be a direct, substantial,

legally protectable interest in the proceeding. *Chiles*, 865 F.3d at 1213-14; *Purcell v.*

*BankAtlantic. Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). When, as here, an organization

alleges undifferentiated, generalized grievances on behalf of itself or its members, it fails to

articulate a particularized interest sufficient to intervene in the action. *See e.g., Lance*, 549 U.S

at 442; *Dillard*, 495 F.3d at 1332-33 ("[a]ny party, whether original or intervening, that seeks

relief from a federal court must have standing to pursue its claims"). And when an intervenor

fails to establish a cognizable interest in the underlying action, "it logically follows that they . . .

have no direct interest that could be impaired or impeded." *See S.E.C. v. Regions Bank*, 2010

WL 3632769, *1, *3 (S.D. Fla. Sept. 1, 2010) (Exhibit 2). Both True the Vote and Judicial

Watch allege generalized speculative grievances that "are not the kind of protectable interest . . .

necessary to support intervention as of right." *ManaSota-88*, 896 F.2d at 1322. Therefore,

neither Proposed Intervenor has an interest that will be impaired or impeded by this action.

1.   **Proposed Intervenor Judicial Watch**

Proposed Intervenor Judicial Watch asserts that it seeks to promote integrity,

transparency, and accountability. *See* ECF No. 28 at 3. The organization states that its members

have two interests that will be injured as a result of this action: (1) the "confidence" that Judicial

Watch's members have in the integrity of the electoral process and the effectiveness of their

vote, and (2) Judicial Watch's registered Florida "voter members" may have their votes

"cancelled or diluted" by alleged unlawful ballots cast by non-citizens. *Id.* at 6.  Neither interest

asserted by Proposed Intervenor Judicial Watch on behalf of its members is sufficient to establish

a particularized interest in this action, and its motion to intervene should be denied. *See Simon v.*

*Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (noting that "insofar as [the]

organizations seek standing based on their special interest . . . their complaint must fail"); *United*

*States v. Hays*, 515 U.S. 737, 745-46 (1995) (finding that plaintiffs did not have standing

because they were not "personally denied equal treatment").

      First, the confidence that Proposed Intervenor Judicial Watch's members may or may not

have in the integrity of the electoral process or the effectiveness of their vote is not a legally

protected interest resulting in a "concrete and particularized injury." *See Fla. State Conf. of*

*NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008).  Like other generalized grievances,

a voter's confidence in the electoral process or the effectiveness of a vote cast can be claimed by

any Florida voter at one time or another. *See United States v. Alabama*, 2006 WL 2290726, *4

(M.D. Ala. Aug. 8, 2006) (denying intervention because the alleged interest could be asserted by

any voter and such "generalized interests [did] not justify intervention in litigation brought by the

United States against a state for the enforcement of a federal statute") (Exhibit 3).   And although

public confidence in the electoral system may be a policy consideration, *see Crawford v. Marion*

*Cnty.*, 553 U.S. 181 (2008), "mere offense" is insufficient to establish a particularized interest.

*See Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 810 (S.D. Ind. 2006) ("Offense alone

in response to government policies or requirements does not suffice to create standing:

'Otherwise there would be universal standing: anyone could contest any public policy or action he disliked. There must be a concrete injury.'") (quoting *Books v. Elkhart County*, 401 F.3d 857, 870 (7th Cir. 2005)), *aff'd sub nom. Crawford v. Marion County Election Bd.*, 472 F.3d 949 (7th Cir. 2007). The extent to which Proposed Intervenor Judicial Watch members have "confidence" is, therefore, an insufficient injury to establish intervention as of right. Similarly, the interests of the "473 members" from Florida who contacted Judicial Watch with an interest in the United States' "efforts to stop the State of Florida's list maintenance efforts," ECF No. 28 at 6, allege no more than a disagreement, which is insufficient to establish a particularized interest in the instant action. *See Georgia*, 19 F.3d at 1394 (finding that proposed intervenor's interest in maintaining local community schools was a "disagreement" with the school board's decision to consolidate, which did "not rise to the level of entitling the movants to intervene. . . ."").

Second, the assertion that Judicial Watch members "may have their votes cancelled or diluted by unlawful ballots" is speculative and insufficient to establish an injury that is concrete. *See ManaSota-88*, 896 F.2d at 1322 (denial of intervention affirmed when proposed intervenors' interest was "purely a matter of speculation."). To establish an imminent harm there must be a realistic danger that an injury will result from the operation or enforcement of a statute. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). In fact, Proposed Intervenor's reliance on *Black v. McGuffage*, 209 F. Supp. 2d 889 (N.D. Ill. 2002), highlights the speculative nature of its asserted interest in the instant action. In *Black*, the Court held that minority voters had standing to prospectively challenge the state's voting system (*i.e.,* ballot machinery) used in their jurisdictions because the voters' claims, based on the higher residual vote rates in their jurisdictions, were "provable and traceable to Defendants' actions." *See Black*, 209 F. Supp. 2d at 94-95. This type of prospective injury was sufficient to establish standing in that case

because there was "a higher probability of [the plaintiff's] vote not being counted as a result of the voting system." *Id.* at 895.

No such causal connection exists where, as here, Proposed Intervenors do not allege facts showing how this action will result in the vote dilution of its members. Although a court may find that vote dilution "is [a] sufficiently concrete and specific" injury, *see FEC v. Akins*, 524 U.S. 11, 25 (1998), a party asserting that it suffers vote dilution must allege that it (or its members) are actually injured. *See Sims v. Frink*, 208 F. Supp. 431, 432 (M.D. Ala. 1962) (the plaintiffs in *Reynolds v. Sims* were duly qualified and registered voters, citizens of the State of Alabama, and citizens of Jefferson and Mobile Counties, the most populated counties in Alabama at the time the action was filed). *See Reynolds v. Sims*, 377 U.S. 533 (1964). Here, Proposed Intervenor Judicial Watch's implicit reliance on Florida's faulty list created by an unreliable database match program raises an unrealistic claim that the organization's members will suffer vote dilution or cancellation of their votes. *See United States v. Florida*, 2012 WL 2457506 at *2 (order denying temporary restraining order) ("The suggestion that there was a list of 180,000 improperly registered noncitizens was plainly wrong.")

The assertion that organizational members may have their vote diluted or cancelled because of alleged non-citizen voters, without more, is insufficient to establish a particularized injury. *See Nat'l Alliance for the Mentally Ill*, 376 F.3d at 1295 ("[a]ssertions about what might happen do not establish an injury that is 'concrete and particularized'"). An asserted injury must be more than "mere speculation." *ManaSota-88*, 896 F.2d at 1322 (denial of intervention when proposed intervenors' interests was "purely a matter of speculation). *See also Washington Elec. Coop. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("[a]n interest…that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not

satisfy the rule."); *Elend v. Basham,* 471 F.3d 1199, 1209 (11th Cir. 2006) (finding that the alleged injury "remains wholly inchoate"). Here, Proposed Intervenor Judicial Watch offers unsupported assertions that its members will suffer vote dilution, and such assertions are grounded in conjecture. *See United States v. Florida,* 2012 WL 2457506 at *2.

And to the extent Proposed Intervenor Judicial Watch asserts that its members share a collective interest in "promoting integrity, transparency, and accountability in government and fidelity to the rule of law," *see* ECF No. 28 at 4, that is a general interest shared by all of Florida's registered voters and broader than the scope of the instant action. *Dillard,* 495 F.3d at 1340 (denying intervention in part because movants alleged "only generalized [non particular] grievances."). *See also Sierra Club v. Morton,* 405 U.S. 727, 739-740 (1972) (holding that if a "'special interest' in [a] subject were enough" to grant organizational standing, "there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived," making it "difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so."); *Athens Lumber Co.,* 690 F.2d at 1367 (affirming district court's denial of intervention when an intervenor did not assert a particularized interest).[2] Because the interests asserted by Proposed Intervenor Judicial Watch are not supported by a "direct, substantial and legally protectable interest in the proceedings," Judicial Watch's motion to intervene should be denied. *Purcell,* 85 F.3d at 1512.

---

[2] To the extent Proposed Intervenor Judicial Watch alleges that its members' votes would be diluted if the United States prevails in this action, such assertions suffer from the same generality as the interest alleged on the face of the motion and would broaden the scope of the instant action. *See Sellers v. United States, 709 F.2d 1469, 1471-72* (11th Cir. 1983) (affirming a district court's denial of a motion to intervene permissively and noting that the proposed permissive intervention would have expanded the litigation).

### 2.   Proposed Intervenor True the Vote

Proposed Intervenor True the Vote asserts that its mission is to ensure the integrity of the nation's electoral system. ECF No. 28 at 7. But to the extent that Proposed Intervenor True the Vote alleges an injury, that injury must be one the organization suffers, not an injury to the electoral process generally. *See Simon*, 426 U.S. at 38 (standing "focuses on the party . . . not the issue [the party] wishes to adjudicate"). Article III's causation requirement is relevant when an intervenor seeks to assert an interest but the line of causation is too attenuated or indirect. *See id.* at 41-42; *Allen v. Wright*, 468 U.S. 737, 757 (1984).

True the Vote does not allege a causal connection between the activities it conducts in support of its mission and the adjudication of this action. Its reliance on *Browning*, 522 F.3d 1153, and *Common Cause of Col. v. Buescher*, 750 F. Supp. 2d 1259, is misplaced. *See* ECF 28 at 11. In both cases the consequences of procedures before a voter became registered was at the center of the dispute and both organizational plaintiffs alleged concrete interests directly related to activities germane to the mission of their organizations. *See Browning*, 522 F.3d at 1160 (finding that an organization had standing when it asserted that database matching would frustrate voter registration, which was germane to its purpose); *Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d at 1268-72 (finding that organizations that registered voters established injury in fact when they submitted the voter registration applications on behalf of members whose registrations were cancelled or, in the alternative, had to divert a substantial amount of their voter outreach and monitoring resources to respond to the State of Colorado's removal of registered voters).

Here, Proposed Intervenor True the Vote asserts that it uses trained volunteers to verify voter registration lists by comparing them to other publicly available data. According to the

organization, this project is "among the largest, if not the largest of all of True the Vote's various programs and is also an integral part of True the Vote's public interest mission." ECF No. 28 at 7. Proposed Intervenor has not, and cannot, allege, however, that the instant action hinders its access to publicly available data or the resources it expends training volunteers, which have a direct bearing on the organization's mission and core activities. Like any plaintiff asserting an injury to itself, Proposed Intervenor True the Vote must show that an alleged injury results from the enforcement or non-enforcement of a law. *See Sierra Club v. Morton*, 405 U.S. at 734-35 ("the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured"). This Proposed Intervenor fails to demonstrate the requisite causal connection in its motion to intervene. *See* ECF No. 28.

Proposed Intervenor True the Vote also fails to substantiate its allegation that it will suffer an economic injury, and cannot show how or why it will have to divert resources from its core mission as a result of this lawsuit. An organization must present evidence that resources must be diverted to allege an economic injury. *See Browning*, 522 F. 3d at 1165 (finding that "all three plaintiff organizations work, among other things, to increase voter registration and participation among members of ethnic and racial communities" and the organizations would have to divert their resources as a "direct result of the enforcement" of the challenged voter registration verification law). Proposed Intervenor True the Vote states that it delivers the results of its volunteer activities to the election officials, and sues states who fail to fulfill their "voter list maintenance obligations . . . [i]n order to protect its organizational interests." ECF No. 28 at 7-8. But True the Vote cannot allege an interest in this action by "bootstrapp[ing]" the costs of carrying out the activities that are integral to its mission. *See Browning*, 522 F.3d at 1166 (citing *Fair Employment Council of Greater Washington, Inc. v BNC Mktg.* Corp., 28 F.3d

1268, 1276-77 (D.C. Cir 1994) (explaining that the costs of using "testers" to ferret out racial discrimination in employment cases cannot be deemed an injury for purposes of standing). Moreover, True the Vote's voter registration list comparisons may lead to lawsuits. ECF No. 28 at 8. Any alleged drain on True the Vote's resources because of this action, therefore, is not an economic injury. *Browning*, 522 F.2d at 1165-66 (costs related to legal challenges are different than costs unrelated to legal challenges and do not drain an organization's resources).[3] Like Proposed Intervenor Judicial Watch, Proposed Intervenor True the Vote's request to intervene should therefore be denied.

### B.   Proposed Intervenors True the Vote and Judicial Watch's Asserted Interests Are Adequately Represented in This Suit

Adequate representation is presumed when an existing party seeks the same objectives as would-be intervenors. *Clark*, 168 F.3d at 461. A Proposed Intervenor must present evidence demonstrating that a party does not adequately represent its interests. *See Sierra Club v. Leavitt*, 488 F.3d at 910-11 (affirming denial of intervention when nothing in the record supported the suggestion that an intervenor was not adequately represented). Here, there is no evidence that Defendants' objectives are not the same as Proposed Intervenors. *See* ECF No. 27 at 1, 7 ("State and federal law both impose a responsibility on the Secretary to safeguard the integrity of Florida elections by identifying improperly registered voters.") As this Court has noted, the State has an interest and duty to maintain an accurate voting list. *United States v. Florida*, 2012 WL 2457506, at *4. Thus, Proposed Intervenors' interests are effectively represented here. *See*

---

[3]   And to the extent that Proposed Intervenor True the Vote may later purport that it will divert its resources to engage in new activities or goals that are not an "integral part of True the Vote's public interest mission," it is a self-inflicted injury that is not sufficient to establish standing. *See Ass'n of Cmty. Org. for Reform Now v. Fowler*, 178 F.3d 350, 358-59 (5th Cir. 1999) ("an organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries, *i.e.,* those that are not fairly traceable to the actions of the defendant").

*Assoc. Indus. of Ala. v. Train*, 543 F.2d 1159, 1161 (5th Cir. 1976) (denying intervention when

Intervenor's and Defendants's positions were "identical" and the "alleged inadequacies [did not]

reflect[] upon the vigor or effectiveness of the defense . . . offered on behalf of defendants").

When, as here, there is no "difference between the objectives that [a party] seeks to fulfill in [a]

case and those of [an intervenor]", a motion to intervene is properly denied. *U.S. v. City of*

*Miami*, 278 F.3d 1174, 1179 (11th Cir. 2002).

    Finally, to the extent that Proposed Intervenors seek to assert interests that are not related

to complying with Section 8 of the NVRA, such interests fall outside the scope of this action.

*See* ECF No. 2 (United States' Complaint). The issue for decision in this case is whether Florida

has violated Section 8 of the NVRA because the list it distributed to Florida Supervisors of

Elections by Defendants constituted a systematic removal program that was not completed

within 90 days of a federal election and whether that list program is non-uniform and

discriminatory. *See* 42 U.S.C. § 1973gg-6. Proposed Intervenors imply that their interests in this

case differ from the State's interests in compliance with Section 8 of the NVRA. *See* ECF No.

28 at 13 (Proposed Intervenors assert that the organizations have interests that are unlike the

State's interests because they have an interest in "ensuring they can . . . . make voter rolls as

accurate as possible . . . [and] ensuring their members have confidence in the legitimacy of the

November 2012 election"). However, proposed Intervenors' asserted interests duplicate the

State's interests. Intervention would therefore not serve the public interest or judicial economy,

and raises serious questions about redressability.[4] *See Johnson*, 915 F. Supp. at 1535 (holding

---

[4]  Indeed, Congress has plenary authority under the Elections Cause of the U.S. Constitution to
strike the appropriate balance between protecting the right to vote and ensuring accurate voter
registration lists in elections for Federal office, as it has done here through the NVRA. *See*
*Harkless v. Brunner*, 545 F.3d 445, 454-55 (6th Cir. 2008) (finding that the Elections Clause
gives "Congress plenary authority over Federal elections but also explicitly ensured that all

that "judicial economy is a relevant consideration"); *Allen*, 468 U.S. at 752, n.19 (noting that the relief requested cannot go "well beyond the violation of the law alleged"). Proposed Intervenor's failure to allege a factual or legal basis for their vague objective supports a denial of intervention because it strongly suggests that their intervention is designed to delay the swift adjudication of this matter.

## C. This Court Should Also Deny Permissive Intervention

Permissive intervention requires an interest sufficient to support a legal claim or defense. *Laube v. Campbell*, 215 F.R.D. 655, 659 (M.D. Ala. 2003), quoting *Diamond v. Charles*, 476 U.S. 54, 77 (1986) (O'Connor, J., concurring). The speculative assertions and generalized grievances Proposed Intervenors have broadly alleged in their pleadings are insufficient to establish a particularized interest in the litigation currently before this Court. Consequently, this Court should deny Proposed Intervenors' request for permissive intervention.

Moreover, a district court's decision to grant permissive intervention is discretionary. *Worlds*, 929 F.2d at 595. Thus, "even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Purcell*, 85 F.3d at 1513. Here, Proposed Intervenors essentially propose to duplicate the efforts of the Defendants. And as discussed more fully above, nothing indicates that Defendants lack the competency to vigorously and effectively vindicate the same interests as Proposed Intervenors and achieve the same objective. *See* ECF No. 27 at 1; *Wollschlaeger v. Scott*, 2011 WL 2672250 *3 (S.D. Fla. 2011) (denying permissive intervention when "[t]he duplicative

---

conflicts with similar state laws would be resolved wholly in favor of the national government."). The fact that proposed intervenors disagree with the balance struck by Congress does not provide them with standing to intervene in this case.

- 16 -

nature of the intervenor's objectives would unduly delay the adjudication of the rights of the parties . . . [and were] unlikely to shed any new light on the . . . issues in the case.") (Exhibit 4). The inefficiencies inherent in duplicative and cumulative efforts are the type of danger that Fed. R. Civ. P. 24(b) is designed to prevent because it seeks to capture the potential drawbacks of piling on parties. *See Bush*, 740 F.2d at 359 (affirming district court's denial of permissive intervention and noting that when an intervenor presents "no new questions" the "third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.").

Proposed Intervenors have no cognizable stake in the outcome of this litigation, are adequately represented by the Defendants, and can readily communicate their perspective on the issues before the Court as *amici*. There is no justification for delaying the adjudication of this matter by permitting applicants to participate as intervenors with all the rights that status entails.

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Court should deny Proposed Intervenors' Motion to Intervene. The United States does not object to the Proposed Intervenors being permitted to participate as *amicus* in this case.

Date:  July 13, 2012

PAMELA C. MARSH
United States Attorney


MICHAEL HARWIN
Georgia Bar Number 335605
Assistant United States Attorney
111 North Adams Street, 4th Floor
Tallahassee, Florida 32301
Tel:  (850)942-8483
Fax: (850) 942-8448

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

/s/ Jenigh J. Garrett
_____
T. CHRISTIAN HERREN, JR
JOHN ALBERT RUSS IV
ELISE SANDRA SHORE
JENIGH J. GARRETT
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave. NW
Room NWB-7254
Tel:  (202) 305-0070
Fax:  (202) 307-3961
United States Department of Justice

- 18 -

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing will be sent electronically to the registered participants through EM/ECF system.

/s/ Jenigh J. Garrett

JENIGH J. GARRETT