IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 4:12-CV-00285-RH-CAS |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF FLORIDA and KEN DETZNER, | ) | |
| Secretary of State, in his official capacity, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**REPLY BRIEF OF BIPARTISAN GROUP OF VOTERS
IN SUPPORT OF THEIR MOTION TO INTERVENE**

**Introduction and Summary**

The Government does not dispute that ineligible non-citizens are included on the State of Florida's voter registration rolls.  Governor Rick Scott publicly has confirmed that at least some of those ineligible "non-citizens have voted in past elections in Florida."  Jason Riley, *Florida Tackles Voter Fraud*, WALL. ST. J., July 16, 2012. Their votes illegally and unconstitutionally dilute the legally cast votes of Putative Intervenors Luis I. Garcia, Diana K. Whitehurst, Hal David Rush, and Barbara A. Dereuil (collectively, "Bipartisan Group of Voters" or "Intervenors").   Intervenors seek to participate in this case to protect their personal, individualized, fundamental constitutional right to vote; it is well within this Court's discretion to grant them permissive intervention under Fed. R. Civ. P. 24(b).

The Government concedes that, under Rule 24(b), parties seeking permissive intervention "must show (1) that their application to intervene is timely" and (2) that they wish to raise "a claim or defense that shares a question of law or fact with the main action."   Government's Opposition Memorandum, D.E. #30, at 5 (June 26, 2012) ("Opp."), *quoting* Fed. R. Civ. P. 24(b).  Crucially, the Government does *not* dispute that Intervenors satisfy both of these requirements.

Intervenors seek to demonstrate that the Government's pending attempt to prevent the State from removing groups of non-citizens from the voter registration rolls violates Intervenors' fundamental right to vote as protected by the U.S. Constitution's Due Process and Equal Protection Clauses. *See* Proposed Counterclaim, D.E. #18-1,  ¶¶ 54–59 (June 20, 2012).  As Intervenors pointed out in their Motion to Intervene, the Supreme Court has recognized that the right to vote includes the personal, individual right of each voter to have his or her vote be "given full value and effect, without being diluted or distorted by the casting of fraudulent ballots."  *Anderson v. United States*, 417 U.S. 211, 226 (1974); *see also Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (holding that an individual's right to vote is denied "just as effectively" by "debasement or dilution of the weight of a citizen's vote . . . as by wholly prohibiting the free exercise of the franchise").

Intervenors also wish to argue that this Court must interpret and apply the National Voter Registration Act's ("NVRA") 90-day exclusion period, 42 U.S.C. § 1983gg-6(c)(2)(A), so as to avoid raising those serious constitutional questions. *See* Proposed Counterclaim, D.E. #18-1, ¶ 49(f). *See also FEC v. Fla. for Kennedy Comm'n*, 681 F.2d 1281, 1287 (11th Cir. 1982) ("Courts are under the duty to avoid, if possible,

construing a statute in a manner that creates constitutional problems."); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 832 (11th Cir. 1982) (interpreting statute in a particular manner "to avoid the serious constitutional questions that would be raised" by the alternate possible interpretation).

Although the Government argues that "[t]he right of registered voters to intervene in litigation impacting the right to vote . . . is limited," Opp. at 7, precedent clearly demonstrates otherwise. *See, e.g.*, *Cal. Democratic Party v. Jones*, 530 U.S. 567, 571 (2000) (discussing intervention of a citizen group in a case concerning open primaries); *Lawyer v. Dep't of Justice*, 521 U.S. 567, 572 (1997) (discussing the lower court's order allowing "a group of black and Hispanic" voters to intervene in a redistricting case); *Florida v. United States*, 820 F. Supp. 2d 85, 86 (D.D.C. 2011) ("Several parties have been granted leave to intervene permissively as defendants, including registered Florida voters who are members of racial and language minority groups and organizations that have a special interest in the administration of Florida's election laws.").[1]

The Government argues that this Court should exercise its broad discretion to deny permissive intervention on five grounds, but none of them are valid. *First*, it contends that the Bipartisan Group of Voters "lack[s] sufficient standing under Article III of the U.S. Constitution." Opp. at 1. *Second*, the Government makes the closely related argument that Intervenors have presented only a "generalized grievance." *Id*. *Third*, the

---

[1]   *See also Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 4 (1982) (discussing intervention by voters in a case challenging the method for filling vacancies in elected offices); *E. Carroll Parish Sch. Bd. v. Marshall*, 424 U.S. 636, 637–38 (1976) (allowing intervention by a minority voter in a reapportionment case); *Bullock v. Carter*, 405 U.S. 134, 136 (1972) (allowing voters to intervene in a lawsuit concerning filing fees for candidates).

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

Government speculates that "[p]ermitting intervention could delay a swift resolution of this case," *id.*, or cause "undue delay or prejudice" to the Government. *Id.* at 5.

***Fourth***, presenting a "heads-I-win-tails-you-lose" dichotomy, the Government argues that the putative Intervenors either are "duplicat[ing]" the State's arguments, *id.* at 5–6, or are "assert[ing] new claims" that would "expand the scope of [the] action." *Id.* at 6.  Regardless of whether the putative Intervenors are pursuing the same claims as the State or different claims, the Government argues that this Court should deny their Motion.  ***Finally***, the Government contends that permissive intervention should be denied because the State adequately represents the Intervenors' interests.  Opp. at 9–10.  As the Government's objections are baseless for the reasons that follow, this Court should exercise its broad discretion to grant the motion for permissive intervention and allow Intervenors to defend their fundamental constitutional rights.

I.    **INTERVENORS HAVE STANDING TO PARTICIPATE IN THIS CASE, EVEN THOUGH STANDING IS NOT A REQUIREMENT FOR PERMISSIVE INTERVENTION IN A LIVE CASE OR CONTROVERSY**

The Government begins by arguing that this Court should refuse to allow Intervenors to participate in this case because they lack constitutional standing.  Opp. at 7; *see also* Opp. at 1 ("Proposed Intervenors have failed to establish sufficient grounds for permissive intervention as they . . . lack sufficient standing under Article III of the U.S. Constitution.").  The Government's argument is wrong in two respects—standing is not required for permissive intervention and, in any event, Intervenors have Article III standing to pursue their claims.

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

The Government quotes the Eleventh Circuit's ruling in *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007) (per curiam), for the proposition that "[a]ny party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." Opp. at 7. The Government wholly ignores the Court's holding in the ***same paragraph*** of that opinion that an intervenor need ***not*** demonstrate "independent standing" to join a pending case, but rather may "'piggyback' upon the standing of [the] original parties." *Dillard*, 495 F.3d at 1330. Furthermore, both of the other cases the Government cites regarding the purported standing requirement for permissive intervention—*Johnson v. Mortham*, 915 F. Supp. 1529, 1535 n.6, 1538 (N.D. Fla. 1996), *cited in* Opp. at 5, and *Clark v. Putnam Cnty.*, 168 F.3d 458, 463 (11th Cir. 1999), *cited in* Opp. at 5—addressed the issue exclusively in the context of intervention as of right under Rule 24(a). Because the underlying case here indisputably is a live controversy between parties that have proper standing, Intervenors need not establish that they satisfy Article III's standing requirements in order to permissively intervene.

Regardless, Intervenors plainly have standing to pursue their proposed claims because they are the "proper part[ies]," *Raines v. Byrd*, 521 U.S. 811, 818 (1997), to litigate whether the Government's attempts to facilitate voting by ineligible non-citizens violate their personal Due Process and Equal Protection rights, *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1178 (11th Cir. 2009) (holding that an entity has standing to "allege violations of [its] own constitutional rights"), regardless of whether those proposed claims ultimately will succeed on the merits. *Wooden v. Bd. of Regents*, 247 F.3d 1262,

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

1280 (11th Cir. 2001).   Intervenors therefore are also well-positioned to further demonstrate how these constitutional considerations should impact this Court's interpretation and application of the NVRA's 90-day exclusion period. *See* 42 U.S.C. § 1983gg-6(c)(2)(A).  Thus, if this Court accepts the Government's assertion that "Article III standing is relevant to determining an intervenor's interest," Opp. at 5; *see also id*. at 7, the fact that Intervenors have standing to pursue claims based on alleged violations of their personal constitutional rights should count heavily in favor of granting permissive intervention.

**II.   EACH PUTATIVE INTERVENOR HAS A DIRECT AND PERSONAL INTEREST IN THIS CASE, NOT A MERE GENERALIZED GRIEVANCE OR CONCERN**

The Government also contends that the Bipartisan Group of Voters has only an "'undifferentiated, generalized grievance about the conduct of government,'" rather than a direct and personal interest in this case.  Opp. at 1, *quoting Lance v. Coffman*, 549 U.S. 437, 442 (2007); *see also id*. at 2 (arguing that Intervenors have only "a generalized grievance against the United States' enforcement action"); *id*. at 8 (arguing that Intervenors have only "generalized interest[s] as . . . registered voter[s]" in this case); *id*. at 12 (same).

The Government's position is simply incorrect.  Intervenors are not pursuing generalized grievances, but rather attempting to assert and protect their individual, personal constitutional rights as recognized by the U.S. Supreme Court.  The Government concedes that "the right to vote is a fundamental right."  Opp. at 7.  As noted earlier, the Supreme Court has held that the constitutional right to have one's vote "be given full

value and effect, without being diluted or distorted by the casting of fraudulent ballots" is "*a right possessed by each voting elector*."  *Anderson*, 417 U.S. at 226 (emphasis added).

The Government's extensive reliance on *Lance v. Coffman*, 549 U.S. 437 (2007), *cited in* Opp. at 7, simply underscores Intervenors' point.  The Eleventh Circuit discussed *Lance* throughout its ruling in *Dillard*, 495 F.3d at 1333, in which it expressly distinguished between litigants such as Intervenors who "allege concrete and *personalized* injuries in the form . . . of *vote dilution*" on the one hand, and those who wish to pursue "mere generalized grievances" about how government operates on the other.  *Dillard*, 495 F.3d at 1333 (emphasis added).  In contrast to *Lance*, Intervenors here assert not just a general interest in having a democratically elected form of government, but a particularized interest in preventing cancellation of their votes.  Thus, under binding Eleventh Circuit precedent, Intervenors' constitutional claims are "concrete and personalized," rather than "mere generalized grievances."  *Id*.

This case stands in stark contrast to *Kalsson v. U.S. FEC*, 356 F. Supp. 2d 371, 373 (S.D.N.Y. 2005), *cited in* Opp. at 12 n.4, in which the plaintiff alleged that the NVRA diluted his right to vote by making it easier for *qualified and eligible electors* to register to vote.  Here, in contrast, the gravamen of Intervenors' claim is that the Government is allowing their right to vote to be unconstitutionally diluted by preventing the State from removing *ineligible* non-citizens from the registration rolls.  Thus, this Court should exercise its discretion to allow permissive intervention.

### III.   INTERVENTION WILL NOT UNDULY DELAY THIS CASE

Next, the Government raises the specter that intervention "will simply prolong and complicate a straightforward case."  Opp. at 9; *see also id*. at 1 (arguing that intervention "could delay a swift resolution of this case"); *id*. at 11–12 (arguing that intervention will "unduly delay the adjudication of the United States' claims"). Intervenors, of course, will not do anything to delay or prolong these proceedings, and will abide by whatever scheduling orders this Court would impose in their absence to ensure swift adjudication.  Nor do Intervenors raise any factual matters that must be resolved separately by the Court.  *Cf. United States v. Lee Cty*., No. 2:12-CV-67-FtM-29SPC, 2012 U.S. Dist. LEXIS 66887, at *10 (M.D. Fla. Apr. 19, 2012) (recommending denial of permissive intervention because "[t]he underlying facts and law needed to establish the Putative Intervenors' claims and the Plaintiffs' claims [were] different"), *cited in* Opp. at 6.

Indeed, the Government itself is the only entity threatening to delay these proceedings.  It has declared that, if this Court grants the Motion to Intervene, it "reserves its rights under the Federal Rules of Civil Procedure to respond to the proposed counterclaim within **60 days** of the Court's permitting intervention."  Opp. at 14 n.5 (emphasis added).  Because such a reservation of rights has no legal effect in this context, its only apparent purpose is to warn the Court that the Government—despite its repeated insistence on resolving this case as quickly as possible, *see* Opp. at 1, 9, 11–12—will drag its feet in responding to Intervenors' proposed three-count Counterclaim.

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

The Government's purported need for two months to formulate its position regarding Intervenors' proposed Counterclaim is surprising, because the allegations in the Counterclaim primarily consist of easily verifiable quotations or paraphrases from Florida's voter registration statutes; the NVRA; one section of the Help America Vote Act ("HAVA"), 42 U.S.C. § 15483; and the Fourteenth Amendment to the U.S. Constitution, U.S. CONST., amend. XIV—all of which are presumably familiar to the Government. *See* Proposed Counterclaim, ¶¶ 8–35, 49, 51–59. The Counterclaim also briefly discusses the (largely undisputed) circumstances that led the Government itself to commence the instant action. *Id*. ¶¶ 36–48. Thus, the Government should not be permitted to rely on its own threatened delay in responding to these proposed Counterclaims as a basis for defeating intervention.

In any event, courts have broad discretion to allow permissive intervention subject to reasonable conditions. *See, e.g.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987) (holding that an order granting permissive intervention "subject to conditions" is not immediately appealable). If this Court concludes that Intervenors' Counterclaim unduly would prolong or complicate these proceedings, it has discretion to allow Intervenors to participate as co-defendants for the limited purpose of demonstrating that the NVRA should be interpreted to permit the State to remove groups of ineligible non-citizens from its voter registration rolls, to avoid raising serious constitutional issues concerning Intervenors' constitutional rights. *See* Proposed Counterclaim, ¶¶ 49(f), 52–53; *Fla. for Kennedy Comm'n*, 681 F.2d at 1287; *Sibley*, 677 F.2d at 832.

The Government further argues that "[i]f every registered voter in the State of Florida" attempted to intervene, "this case would become unmanageable."  Opp. at 9. This Court need not address that hypothetical scenario, however, since Intervenors are the only actual eligible and registered Florida voters attempting to participate in this case.  If other voters attempt to intervene at some later point, this Court reasonably could: conclude that their request is untimely within the context of this case; hold that the Bipartisan Group of Voters adequately represents their interests; require the additional voters to demonstrate that they could make a substantial contribution to a fair, just, and swift resolution of this matter; or impose other conditions or limitations to ensure they neither burden this Court with duplicative filings nor hinder the smooth flow of these proceedings.  Concerns such as those expressed by the Government have never prevented the courts from adjudicating important constitutional rights that are asserted in the course of litigation.  Thus, the Government's hypothetical specter of additional intervenors is not a basis for denying permissive intervention here.

## IV.    INTERVENORS' CLAIMS QUALIFY FOR PERMISSIVE INTERVENTION

The Government further argues that Intervenors are attempting to "significantly expand the scope of this action" by introducing extraneous constitutional issues.  Opp. at 9; *see also id*. at 11–12, 14.  It claims that Intervenors "wish to change a straightforward case about the proper interpretation of a federal statute" and "transform it to a novel claim challenging the constitutionality of the NVRA." *Id*. at 12.

To the contrary, the claims and defenses Intervenors seek to raise all directly relate to the central question in this case—whether the NVRA prohibits the State from protecting its citizens' fundamental right to vote from dilution by removing non-citizens from the voter registration rolls within 90 days of a federal election. *See* 42 U.S.C. § 1983gg-6(c)(2)(A). In addition to supplementing and enhancing the State's arguments, *see* Proposed Counterclaim, ¶ 49, Intervenors intend to show that the Government's position would violate their fundamental Due Process and Equal Protection right to vote by allowing their legitimately cast votes to be diluted by votes from ineligible non-citizens. *See id*. ¶¶ 54–59. Under the doctrine of constitutional avoidance, these are issues the Court must consider in its interpretation and application of the NVRA. *Fla. for Kennedy Comm'n*, 681 F.2d at 1287; *Sibley*, 677 F.2d at 832.[2]

Thus, the constitutional claims Intervenors wish to pursue not only "share a question of law" with the main action, Fed. R. Civ. P. 24(b), but arise from the same core nucleus of operative fact, and therefore are part of the same case and controversy, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). These claims therefore are most appropriately adjudicated as part of this case and will not "expand the scope of the action." Opp. at 6. *Cf. Sellers v. United States*, 709 F.2d 1469, 1472 (11th Cir. 1983) (affirming the district court's refusal to allow permissive intervention where the plaintiff sought damages for a warrantless inventory search, and the issues raised by the putative intervenor included "the computation of [her] income tax liability"), *cited in* Opp. at 6,

---

[2] Although this Court already ruled, in denying the Government's Motion for Temporary Restraining Order, that the NVRA by its very terms does not prohibit removal of non-citizens from the voter rolls within the 90 days before the election, *see* D.E. #34, it does not appear that the Government has conceded this point.

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida 33131 • 1.305.704.3990

12; *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (affirming the district court's conclusion that a declaratory judgment suit over whether a resort was entitled to insurance coverage against a wrongful death claim, despite its failure to cooperate with its insurance company, did not involve a common question of law or fact with the underlying wrongful death claim), *cited in* Opp. at 6.

The Government offers a string cite of cases in which it contends "[t]he constitutionality of the NVRA has been repeatedly upheld," Opp. at 12 n.4, but does not actually discuss any of those authorities, because they are not relevant to the issues Intervenors wish to raise regarding their personal constitutional rights.  Virtually all of the Government's cases reject states' and citizens' federalism-based objections, under Article I of the Constitution or the Tenth Amendment, to either the NVRA as a whole or its requirement that states make voter registration forms more widely available.  *See, e.g.*, *Ass'n of Comm. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997) (holding that the Government may require states to distribute voter registration forms at state welfare offices), *cited in* Opp. at 12 n.4; *Voting Rights Coalition v. Wilson*, 60 F.3d 1411, 1415–16 (9th Cir. 1995) (holding that the Tenth Amendment may prevent certain aspects of the NVRA from being applied to state elections, but that Congress had the authority to apply it to federal elections), *cited in* Opp. at 12 n.4; *Ass'n of Comm. Orgs. for Reform Now v. Edgar*, 56 F.3d 791, 796 (7th Cir. 1995) (holding that Congress may require states to cover the cost of complying with the NVRA), *cited in* Opp. at 12 n.4; *Kalsson v. U.S. FEC*, 356 F. Supp. 2d 371, 373 (S.D.N.Y. 2005) (holding that the voter

McDonald Hopkins LLC, Attorneys at Law
200 South Biscayne Boulevard, Suite 3130, Miami, Florida  33131 • 1.305.704.3990

plaintiff lacked standing to bring a Tenth Amendment challenge to NVRA provisions that make it easier for eligible electors to register to vote), *cited in* Opp. at 12 n.4.

The only case in which a plaintiff squarely alleged a violation of his constitutional rights, *Amalfitano v. United States*, No. 00-Civ-3229 (KMW), 2001 U.S. Dist. LEXIS 1128, at *2 (S.D.N.Y. Feb. 7, 2001), *aff'd* 21 F. App'x 67 (2d Cir. 2001), *cited in* Opp. at 12 n.4, involved a claim that the NVRA violated the plaintiff's right to petition his state legislature to enact laws inconsistent with the NVRA's requirements.  None of the Government's cases involve allegations by voters that application of the NVRA's 90-day "quiet period" violates their constitutional rights or facilitates unconstitutional vote dilution.  Thus, Intervenors have raised substantial issues that directly relate to the heart of the underlying case.  Taking into account interests of "judicial economy" as the Government urges, *see* Opp. at 6, *citing Johnson v. Mortham*, 915 F. Supp. 1529, 1535 (N.D. Fla. 1996); *see also* Opp. at 8, this Court should allow permissive intervention, rather than requiring Intervenors to pursue their claims in a "separate suit," *id*. at 12.

## V.   PERMISSIVE INTERVENTION IS APPROPRIATE DESPITE THE STATE'S INVOLVEMENT IN THIS CASE.

Finally, the Government contends that this Court should deny permissive intervention because "the State will adequately represent the interests of the Proposed Intervenors."  Opp. at 10; *see also id*. at 5–6 (arguing that a court may deny intervention "if a would-be intervenor's objective duplicates the objective of a party").  This Court should reject that argument out of hand.  As the Government itself acknowledges, whether an existing party adequately represents the interests of a putative intervenor is an

element of intervention as of right, *see* Fed. R. Civ. P. 24(a), while the Bipartisan Group of Voters "only seek[s] permissive intervention."  Opp. at 9.  Thus, that element has no bearing here.

Even if this Court were to consider this factor, however, it cuts in favor of allowing permissive intervention.  The State obviously cannot adequately represent the putative Intervenors' interests because it lacks standing to assert its citizens' constitutional rights.  Indeed, in *Edgar*, 56 F.3d 791, *cited in* Opp. at 12 n.4, the court expressly held that a state government "does not have standing to assert the voting rights of its citizens" in a constitutional challenge to the NVRA.  *See also Ross v. Duggan*, 402 F.3d 575, 587 (6th Cir. 2004) ("[N]o plaintiff had standing to assert any alleged violation of the constitutional rights of a different individual.").  More generally, "[a] state does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). Intervention therefore is the only means through which Intervenors' constitutional claims may be litigated as part of this case.

Additionally, as this Court is well aware, the State presently is involved in several other cases against the Government relating to the upcoming election.  *See, e.g.*, *Florida v. United States*, No. 1:11-CV-01428-CKK-MG-ESH (D.D.C. filed Aug. 1, 2011) (regarding DOJ's refusal to grant preclearance of changes in Florida's third-party voter registration statute); *Florida Dep't of State v. Dep't of Homeland Security*, No. 1:12-CV-00960-JDB (D.D.C filed June 11, 2012) (regarding DHS's refusal to grant the State of Florida access to its alien registration database to confirm the citizenship of people on

Florida's voter registration rolls).  Because this case is only one of the State's numerous pending election-related conflicts with the Department of Justice, it must develop its positions and advance its arguments with an eye toward not unduly antagonizing the Government, and potentially entering into a more global accommodation and settlement. "A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999). The State also has "a duty to consider the expense . . . out of [its] coffers" of continuing to aggressively litigate this range of cases. *Id.*

Likewise, by its very nature, the State necessarily must "balance a range of interests likely to diverge from those of the Intervenors," including "the overall fairness of the election system . . . the expense of litigation to defend the [election] system, and the social and political divisiveness of the election issue." *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993), *overruled in part on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1335-36 (11th Cir. 2007).  The State's position also is "likely to be influenced" by the Governor's and Secretary of State's "desires to remain politically popular and effective leaders.  These divergent interests create[] a risk that [the State] might not adequately represent [Intervenors]." *Id.*; *see also Am. Farm Bureau Fed'n v. U.S. EPA*, 278 F.R.D. 98, 111 (M.D. Pa. 2011) (holding that, because a federal agency "represents the broad public interest, it must consider not only the interests" of putative intervenors, but a host of other "possibly conflicting interests" as well).

Intervenors, in contrast, may focus exclusively on the proper interpretation and application of the NVRA, as well as the protection and enforcement of their personal constitutional rights.  For all these reasons, the State does not adequately represent Intervenors' interests.  Thus, this Court should allow permissive intervention.

## CONCLUSION

For these reasons, Intervenors respectfully request that this Court grant their Motion for Permissive Intervention.

Respectfully submitted,

s/ Raquel A. Rodriguez
Raquel A. Rodriguez
Fla. Bar No. 511439
rrodriguez@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3130
Miami, FL 33131-2344
Tel: (305) 704-3994
Fax: (305) 704-3999
*Attorneys for Putative Intervenors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 19, 2012, a true and correct copy of the foregoing was filed with the Clerk of Court via the CM/ECF system, causing a Notice of Electronic Filing to be sent to all counsel of record.

s/ David Axelman
David Axelman