**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

_____ )
                                         )
THE UNITED STATES OF AMERICA,            )
                                         )
                    *Plaintiff*,         )
                                         )
        v.                               )   Case No. 4:12cv285-RH/CAS
                                         )
STATE OF FLORIDA and KEN DETZNER,        )
Secretary of State, in his official capacity,  )
                                         )
                    *Defendants*.        )
_____ )


**JUDICIAL WATCH, INC. AND TRUE THE VOTE'S REPLY TO
PLAINTIFF'S OPPOSITION AND RESPONSE TO MOTION FOR
INTERVENTION**

Judicial Watch, Inc., and True the Vote ("Proposed Interveners")

respectfully submit this Reply to Plaintiff's Opposition and Response (ECF No.

39) to their Motion for Intervention (ECF No. 28).

**Introduction**

The Department of Justice's ("DOJ" or "Plaintiff") Opposition is based

largely on the false premise that Proposed Interveners cannot identify a protectable

legal interest that forms the basis for their intervention.  Proposed Interveners have

such a legal interest pursuant to the National Voter Registration Act of 1993

("NVRA"), which requires states to remove ineligible voter registrations and

1

permits and encourages public involvement in that process.  Unlike generalized voting rights claims where interveners' interests may be too undefined or broad to be considered particularized, private citizens have a direct interest in the satisfaction of the voter registration list maintenance requirements of Section 8 of the NVRA.  42 U.S.C. §§ 1973gg-6(c), 1973gg-6(d), 1973gg-6(i).  Accordingly, the Proposed Interveners have an interest in ensuring Florida proceeds with its list maintenance activities pursuant to that federal statute.  Application of the NVRA therefore constitutes a protectable legal interest under Federal Rule of Civil Procedure 24(a)(2), if not an "unconditional right to intervene by federal statute" under Rule 24(a)(1).

If the Court does not grant mandatory intervention, at a minimum permissive intervention is warranted.  Fed R. Civ. P. 24(b).  Moreover, Plaintiff is incorrect to oppose permissive intervention by groups who protect election integrity on behalf of those who have a particularized interest in its enforcement. As explained below in Section VII, it is unusual for DOJ to oppose permissive intervention in cases such as this one.  Because of Plaintiff's opposition to either mandatory or permissive intervention, a thorough reply is now required.

## I.    Article III Injury Is Not Needed for Intervention

Much of Plaintiff's Opposition incorrectly argues that, because Judicial Watch and True the Vote have not alleged sufficient Article III injury to have

standing to bring claims under Section 8 of the NVRA, they may not intervene. *See* ECF No. 39 at 4 (discussing elements of standing needed to initiate a complaint), 8 (claiming Judicial Watch members have an "insufficient injury" to intervene), 11 (discussing standards for organizational *injury*), 12 (conflating intervention with the injury-in-fact test for Article III standing: "Like any plaintiff asserting an injury to itself, Proposed Intervenor True the Vote must show that an alleged injury results from the enforcement or non-enforcement of a law.").

But the question of Article III standing is not the correct legal standard to apply to interventions. Proposed Interveners do not need to allege or prove Article III injury-in-fact to intervene in the present case, but only need to show a particularized, legally protectable interest. *Dillard v. Chilton County Commission*, 495 F.3d 1324, 1330 (11th Cir. 2007) ("Intervening parties, however, need not in every instance demonstrate that they independently fulfill the familiar requisites of injury-in-fact, causation, and redressability. Because of lessened justiciability concerns in the context of an ongoing Article III case or controversy, intervenors in this circuit may in some cases be permitted to "piggyback" upon the standing of original parties to satisfy the standing requirement."); *Dillard* v. *Baldwin County Comm'rs*, 225 F.3d 1271, 1277-78 (11th Cir. 2000) ("[A] party seeking to intervene into an already existing justiciable controversy need not satisfy the requirements of standing as long as the parties have established standing before

the court."); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) ("[A] party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit").

Plaintiff's reliance on *Sierra Club v. Morton*, 405 U.S. 727 (1972) as authority for its position is similarly incorrect, as that decision addressed standing to bring a lawsuit under the Administrative Procedures Act, not protectable interests necessary for intervention.  ECF No. 39 at 10, 12.  Rather, to intervene, it is sufficient for parties to have a legitimate interest and a cognizable claim in existing litigation.  A party entitled to intervention as a matter of right does not need to establish injury-in-fact, but only a "direct, substantial and legally protectable interest in the subject matter of the suit."  *Meek v. Metropolitan Dade County, Florida*, 985 F.2d 1471, 1477 (11th Cir. 1993); *Federal Savings & Loan v. Falls Chase*, 983 F.2d 211, 215 (11th Cir. 1993).  Proposed Interveners have such an interest, and they pled it with specificity in their Motion.  Accordingly, the Motion should be granted.[1]

---

[1]  Proposed Interveners note that they believe they would have Article III standing and sufficient injury to bring a lawsuit against Florida under NVRA Section 8, as they have brought a similar lawsuit against Indiana.  42 U.S.C. § 1973gg-9(b)(2).  While the elements of standing are "relevant" to understanding a legally protected interest for the purposes of intervention, *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989), the DOJ Opposition often entirely conflates these two separate legal concepts.  Since it is unnecessary to establish an Article III injury-

**II.      Proposed Interveners Have Alleged Sufficient Facts for Intervention**

Plaintiff incorrectly alleges there are insufficient facts to support Proposed

Interveners' Motion.  ECF No. 39 at 2 ("Proposed Intervenors assert limited facts

in their motion…"), 12 ("Proposed Intervenor True the Vote also fails to

substantiate its allegation that it will suffer an economic injury…),  15 ("Proposed

Intervenors' failure to allege a factual or legal basis for their vague objective

supports a denial of intervention…").  All facts necessary to establish mandatory

intervention were fully addressed in the Motion.  To the extent Plaintiff is

questioning whether those facts were adequately supported, declarations from the

presidents of both organizations have been included with this reply brief.  *See* Exh.

1, Declaration of Thomas J. Fitton, and Exh. 2, Declaration of Catherine

Engelbrecht.

As explained in the Motion, Judicial Watch sent a letter to the State of

Florida on February 6, 2012 to inquire about Florida's compliance with the voter

list maintenance provisions of Section 8 of the NVRA. ECF No. 28 at 5, fn. 5.

Judicial Watch sent this letter on its own behalf, on behalf of its members who are

registered to vote in the State of Florida, and on behalf of True the Vote.  *See*

Fitton Decl., Exh. 1 at ¶ 14.  By sending that letter, Proposed Interveners

─────────────────────────

in-fact showing for the present intervention, Proposed Interveners do not ask for
such a finding here.

established their protectable legal interest in the outcome of Florida's list
maintenance activities leading up to the November 2012 elections.

Proposed Interveners Judicial Watch and True the Vote have already
brought such a civil action against the State of Indiana pursuant to NVRA Section
8 following a similar notice letter to that State. *See Judicial Watch, Inc. and True
the Vote v. Bradley King and Trent Deckard, in their official capacities, and
Connie Lawson, in her official capacity*, Case No. 1:12-cv-800, U.S. District Court
for the Southern District of Indiana (complaint filed June 11, 2012). Similarly,
Judicial Watch and True the Vote may bring civil actions against Florida under
Section 8 of the NVRA if it fails to comply with the law's requirements. *See*
Fitton Decl., Exh. 1 at ¶¶ 14-16, Engelbrecht Decl., Exh. 2 at ¶ 8. Given Proposed
Interveners' potential independent claims against Florida, allowing their
intervention rather than forcing separate lawsuits would promote judicial economy
and should be allowed. *Meek v. Metropolitan Dade County, Florida*, 985 F.2d
1471, 1478 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing
intervention should be resolved in favor of the proposed interveners because it
allows the court to resolve all related disputes in a single action."); *Federal
Savings and Loan v. Falls Chase Special Taxing Dist*., 983 F.2d 211, 216 (11th
Cir. 1993) (same).

**III.     DOJ's Concerns About Delay Do Not Justify Denial of Intervention**

Plaintiff's expressed concerns about delay do not justify denying intervention.  ECF No. 39 at 1 ("Moreover, permitting intervention would likely delay a swift resolution of this case…), 15 (the Motion "suggests that their intervention is designed to delay the swift adjudication of this matter."), 16 ("There is no justification for delaying the adjudication of this matter by permitting applicants to participate as intervenors with all the rights that status entails.").  The purpose of this intervention is to protect the interests of Judicial Watch members and the organizational interests of True the Vote, and given the early stage of the litigation, no delays would result.  ECF No. 28 at 5.

Proposed Interveners are cognizant of the Court's interest in a prompt resolution of this case and are committed to avoiding delays or unnecessary duplication of efforts in areas satisfactorily addressed by the Defendants, and will coordinate future proceedings with the parties as much as possible.  Because no delay will result, grant of intervention is appropriate because Proposed Interveners' "claim or defense and the main action have a question of law or fact in common."  *Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1365 (11th Cir. 1984). Proposed Interveners respectfully submit that Plaintiff is creating greater delay by opposing the interventions in this case instead of giving its consent, as it has done in virtually all other voting rights cases (*see* Section VII, below).

7

**IV.     Judicial Watch Members' Interest Is Sufficient for Intervention**

Once again, Plaintiff inaccurately conflates Article III injury-in-fact with the "legal protectable interest" required for intervention when arguing against intervention for Judicial Watch.  ECF No. 39 at 4 (extended discussion of Article III standing), 8 ("The extent to which Proposed Intervener Judicial Watch members have "confidence" is, therefore, an insufficient injury to establish intervention as of right.").  As explained in detail above in Section I, injury-in-fact is not the showing Judicial Watch is required to make in order to intervene, nor is it the standard the Court should apply to rule on its Motion.  As explained directly below, Judicial Watch members' legal interest is sufficient to intervene.

Plaintiff fails in its remaining arguments for why Judicial Watch may not intervene in this case.  Specifically, 1) Judicial Watch's members have a direct, legally protectable, *and particularized* interest in the election integrity issues before the Court which do *not* apply equally to the entire adult population of Florida, and 2) Judicial Watch may speak for its members' interests concerning enforcement of federal election integrity laws as presented to this Court.

First, throughout its opposition brief, Plaintiff attempts to inaccurately portray Judicial Watch members' interest in this case as neither legally protected nor particularized.  ECF No. 39 at 1, 6, 7, 8-9.  In fact, the interest is both.  As explained in its Motion, Judicial Watch members have an established legally

8

protected interest both in their own confidence in the integrity of the November

2012 election and in ensuring their votes are not cancelled-out.  ECF No. 28 at 11-

12.  To deny these legal interests, Plaintiff mischaracterizes the holdings of both

*Black v. McGuffage*, 209 F. Supp. 2d 889 (N.D. Ill. March 29, 2002)

("*McGuffage*") and *Crawford, v. Marion County Election Bd*., 553 U.S. 181, 197

(2008)  ("*Crawford*") in a way that suggests their holdings do not apply to Judicial

Watch members.  ECF No. 39 at 7-8, 8-9.

> Plaintiff's characterizations are inaccurate.  Plaintiff tries to explain away

the legal interest in ensuring citizens have confidence in the integrity of the

electoral process as a mere "policy consideration."  ECF No. 39 at 7.  However,

the Supreme Court has held that voter confidence is not just a policy

consideration, but rather is a legally protected state interest of the very highest

order because it protects citizen participation in our democracy:

> Finally, the State contends that it has an interest in protecting public
> confidence "in the integrity and legitimacy of representative
> government."  Brief for State Respondents, 53.  While that interest is
> closely related to the State's interest in preventing voter fraud, public
> confidence in the integrity of the electoral process has independent
> significance, because it encourages citizen participation in the
> democratic process.

*Crawford*, 553 U.S. at 197.  *See also Stewart v. Blackwell*, 356 F. Supp. 2d 791,

804 (N.D. Ohio, Dec. 14, 2004) ("The right to vote is central to our freedoms.  The

public's confidence in the integrity of the vote tabulation is absolutely essential to

the respect we, as Americans, accord our elected officials.") (internal citations

omitted).  Where it concerns application list maintenance provisions of Section 8

of the NVRA, the legally protected state interest of voter confidence should also

be viewed as an interest "protected by the NVRA" which individuals can assert on

their own behalf.  *Charles H Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349,

1355 (11th Cir. 2005)

Plaintiff's application of *McGuffage* to the present circumstances fares no

better.  Plaintiff acknowledges that, under *McGuffage*, injury from vote dilution is

a legally protected interest for which plaintiffs only need to show a "prospective"

risk of future dilution to obtain judicial relief.  ECF No. 39 at 8.  However,

Plaintiff then states that Judicial Watch failed to "allege facts" sufficient to show

its members face a similar risk of disenfranchisement as the plaintiffs in

*McGuffage*.  ECF No. 39 at 9.

Judicial Watch properly established the risk to its members' from

insufficient voter roll list maintenance in its Motion.  *See* ECF No. 28 at 11-12.

Judicial Watch reiterates that Plaintiff's efforts to prevent Florida from applying

the election integrity laws create a "higher probability [of intervener's members]

vote not being counted," because Plaintiff's actions increase the likelihood of

unlawful ballots being cast.  ECF No. 39 at 9 (quoting *McGuffage*); *see also*

*Crawford* at 191 ("The State also argues that it has a particular interest in

10

preventing voter fraud in response to a problem that is in part the product of its own maladministration--namely, that Indiana's voter registration rolls include a large number of names of persons who are either deceased or no longer live in Indiana.").  Logically, it follows that an unlawful ballot cast for one candidate cancels out a lawful ballot cast for the competing candidate.[2]

Finally, it is entirely foreseeable that if Florida does not take steps to safeguard its elections through voter list maintenance efforts, the risk of an unlawful or disputed electoral outcome is increased:

> While the Commission is divided on the magnitude of voter fraud – with some believing the problem is widespread and others believing that it is minor – there is no doubt that it occurs.  The problem, however, is not the magnitude of the fraud.  In close or disputed elections, and there are many, a small amount of fraud could make the margin of difference.

*See* Report of The Commission on Federal Election Reform, Jimmy Carter and James A Baker, III (Co-Chairs), "Building Confidence in U.S. Elections," American University's Center for Democracy and Election Management, p. 18 (September 2005).

---

[2]  It is unnecessary for Proposed Interveners to argue the risk of voter disenfranchisement has a sufficiently proximate causal connection to DOJ's actions to establish Article III injury-in-fact, and no such argument is made here. Rather, Proposed Interveners submit the risk of disenfranchisement from DOJ's actions constitutes a sufficient legally protected interest which satisfies the standard for mandatory intervention under Rule 24.  *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007).

Plaintiff's argument that Judicial Watch members' legally protected interests are "generalized" to the entire population rather than "particularized" to Judicial Watch members does not hold up under scrutiny.  ECF No. 39 at 1, 6-8. Judicial Watch does not claim for its members a vague interest in their right to vote or in their confidence, which Plaintiff suggests would lead to "universal standing."  ECF No. 39 at 8.  Rather, Judicial Watch's members are claiming an interest in their specific, legally protected interests in the list maintenance provisions of Section 8 of the NVRA – an interest Congress saw fit to invest in them. *See e.g.* 42 U.S.C. § 1973gg-6(i).  Judicial Watch, acting on behalf of itself, its members, and True the Vote, asserted this interest to the State of Florida by letter dated February 6, 2012.  In this regard, Judicial Watch members' interests are markedly more concrete than those of proposed interveners in *United States v. Alabama*, 2006 WL 2290726, *4 (M.D. Ala. Aug. 8, 2006).  Therefore, Plaintiff's reliance on that decision is misplaced.  ECF No. 39 at 7.

It is similarly irrelevant for Plaintiff to speculate that lapses in confidence in the legitimacy of elections might be "claimed by any Florida voter at one time or another…"  ECF No. 39 at 7.  In the present case, Judicial Watch members' confidence may be undermined if Florida cannot perform voter list maintenance to remove ineligible registrations as required by Seciton 8 of the NVRA.  Judicial

Watch's discrete membership has a highly particularized interest in the legal issues in this case.  *See* Fitton Decl., Exh. 1 at ¶¶ 5-6, 11-13.

Finally, Judicial Watch may represent its members' interests in this matter, and Plaintiff is incorrect to the extent it suggests otherwise.  ECF No. 39 at 1, 8, 10.  Judicial Watch is not asserting a roving mandate to intervene on behalf of its members in any case implicating a "generalized interest in the enforcement of law" (ECF No. 39 at 1, *quoting Judicial Watch v. FEC*, 180 F. 3d 277, 278 (D.C. Cir. 1999).  Similarly, Judicial Watch does not claim to be intervening to represent its members' broadest "collective interest in promoting integrity, transparency, and accountability in government…"  ECF No. 39 at 10.

Rather, Judicial Watch may intervene where its members have a particularized, protectable interest on an issue germane to Judicial Watch's purpose, on which the members' views are known such that Judicial Watch may express them collectively.  *Int'l Union v. Brock,* 477 U.S. 274, 290 (1986) ("the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others"); *see also Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1271-1272 (Dist. Colo. Nov. 3, 2010).  As demonstrated above and in the attached declaration of Thomas J. Fitton, these elements are present here, and the instant intervention is "thus within the scope of reasons that individuals joined" Judicial Watch.  *Friends of the Earth, Inc. v.*

*Chevron Chemical Co.*, 129 F.3d 826, 829 (5th Cir. 1997); *See also* Fitton Decl., Exh. 1 at ¶¶ 3-6.

## V.    True the Vote's Organizational Interest Is Sufficient for Intervention

Plaintiff incorrectly argues that its actions preventing the state of Florida's list maintenance efforts neither frustrate True the Vote's essential organizational purpose (ECF No 39 at 11-12) nor force True the Vote to divert resources from its other election integrity projects (ECF No 39 at 12-13).  Neither claim is accurate.

True the Vote has legally protected organizational interests which are directly implicated by Plaintiff's actions.  True the Vote carries out its organizational activities in furtherance of the voter list accuracy provisions of Section 8 of the NVRA, and it has a legally protected right to engage in these activities.  These activities were explained at length in the Motion (ECF 28 at 7-9) and are reiterated here.  Engelbrecht Decl., Exh. 2 at ¶¶ 4-7, 10.  True the Vote's election integrity activities are protected under the NVRA, and its right to engage in them is therefore a "legally protected interest" under the NVRA.  *Charles H Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1353 (11th Cir. 2005) ("*Cox*").

Section 8 of the NVRA requires states to make available to the public "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. . . ."  42 U.S.C. § 1973gg-6(i).  Therefore, the statute "impliedly

encourages" the precise activity True the Vote is engaged in.  *Cox*, 408 F.3d at 1353 (11th Cir. 2005).  Accordingly, True the Vote has a particularized, legally protected interest in the enforcement of NVRA Section 8 by dint of the same private right of action which gives voter registration organizations an interest in the enforcement of NVRA Section 7.  *Cox*, 408 F.3d at 1354 ("The NVRA protects Plaintiffs' rights to conduct registration drives and submit voter registration forms by mail, and Defendants' denial of the sixty-four forms here was a clear invasion of that interest, traceable to Defendants' actions, and redressable by injunctive relief.  As such, Plaintiffs have standing to sue.").

Plaintiff's attempt to distinguish *Common Cause of Colo. v. Buescher*, 750 F. Supp.2d 1259 (D. Colo. 2010) ("*Common Cause*") does not succeed, as that case was the direct progeny of the Eleventh Circuit's decision in *Cox*.  ECF 38 at 11.  Plaintiff tries to miscast the question as whether DOJ is directly stopping True the Vote from accessing public data or training volunteers, but this misinterprets the holding of *Common Cause*.  In that case, Colorado did nothing to *prevent* organizations from collecting and submitting new voter registrations – it just ensured that Common Cause's and other voter registration groups' efforts were rendered *less effective*.  Colorado did this by removing the registrations from the voter rolls quickly if the state was not able to verify them as accurate.  *Common Cause* at 1269.  The Court had little trouble finding that this constituted

15

organizational injury to a protected interest under the NVRA. *Common Cause* at 1269 ("Accordingly, the fact that individual "registrations" submitted by SEIU and Mi Familia were cancelled by operation of the 20-day rule is sufficient to establish organizational injury-in-fact under *Cox*, and the Secretary's assertion to the contrary is rejected.").

Similarly, DOJ's actions to stop Florida from maintaining accurate voter rolls do not *prevent* True the Vote from conducting its election integrity activities in Florida – they would just render those activities *less effective*.  It does little good for True the Vote to use its expertise in voter list integrity, its resources, and its volunteer base to identify ineligible registrations which must be removed from the rolls under the NVRA if DOJ prevents Florida from removing those names.  True the Vote therefore has an interest in ensuring Florida carries out its list maintenance obligations thoroughly and consistent with federal law.

This leads to the second way by which Plaintiff has invaded True the Vote's legally protected interests – by forcing it to divert its resources away from its other voter list integrity efforts and towards additional voter list accuracy efforts in Florida.  Since Plaintiff is trying to prevent Florida from removing ineligible names itself, True the Vote must spend additional time identifying ineligible names which should have been removed by the state's required actions

under the NVRA. If Plaintiff succeeds in inhibiting Florida's list maintenance

activities,  True the Vote's will have to divert resources to counter that result:

> In HAGC's case, compensating for the new obstacles created by
> Subsection 6 would divert substantial resources away from helping
> voters who may need language-translation assistance on election
> day. The Florida NAACP plans to register ten percent of the
> African-Americans eligible to vote in the upcoming election, and
> personnel that  would otherwise be part of this registration effort
> would have to be diverted to resolving mismatches under Subsection
> 6. Instead of "abstract social interests," the plaintiffs have averred
> that their actual ability to conduct specific projects during a specific
> period of time will be frustrated by Subsection 6's enforcement….
> Even though the injuries are anticipated rather than completed
> events, they satisfy the immediacy and likelihood requirements…
> and for those reasons, the Secretary's argument that the
> organizational injuries are not concrete or particularized fails.

*Florida State Conference of NAACP v. Browning*, 522 F 3d 1153, 1166 (11th Cir.

2008).  For the present case, this constitutes a legally protected interest in True the

Vote's allocation of its own resources for activities protected by the NVRA.

The fact that True the Vote is engaged in voter registration list accuracy

activities instead of voter registration activities is of no matter – both are protected

activities under the NVRA.  Therefore, True the Vote's potential diversion of

resources to counteract Florida's inability to perform list maintenance directly

effects True the Vote's ability to carry out its protected activities, and would not

amount to a mere organizational choice:

> All three Plaintiffs, moreover,  claim injury-in-fact under *Havens*
> and *Browning* as a result of having had to divert substantial
> resources from their normal election activities in 2008 to counteract

> the actual and threatened effects of the 20-day Rule… I conclude
> that each of the Plaintiffs Common Cause, Mi Familia, and the SEIU
> have established an injury-in-fact to their own organizational
> interests under *Havens* and *Browning* sufficient to challenge *C.R.S. §*
> *1-2-509(3)* under the NVRA.

*Common Cause* at 1270-1271.

Finally, DOJ claims that True the Vote failed to substantiate the claim that it would have to divert resources if Florida cannot clean its voter rolls (ECF No. 39 at 12), but this claim was properly pled and sufficiently established in the Motion. ECF No. 28 at 9, 11. To the extent DOJ questions the statements contained in the Motion concerning diversion of its resources, True the Vote reiterates them here. *See* Engelbrecht Decl., Exh. 2 at ¶¶ 10-11.

## VI. Both True the Vote and Judicial Watch Have Shown "Adversity of Interest" with Florida

As explained above in Section II., both Judicial Watch and True the Vote may have independent legal claims against the State of Florida under the NVRA. This in itself is sufficient to establish the "minimum" showing of adversity for purposes of intervention. *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999). Plaintiff's arguments that this showing has not been met (ECF No. 39 at 13-15) simply ignores the existence of the letter from Judicial Watch to Florida outlining their claims concerning its NVRA enforcement. That letter was described and linked-to in the Motion. ECF No. 28 at 5.

In any event, Florida cannot provide adequate representation to Proposed Interveners in this matter, as Plaintiff claims.  ECF No. 39 at 13.  The State of Florida is a sovereign government with police powers over approximately 19 million individuals.  It has many broad institutional interests that extend well beyond ensuring its voter rolls are accurate, and which may at times conflict with that goal.  Proposed Interveners' interest in this litigation is narrowly focused on ensuring Plaintiff does not prevent Florida from following the list maintenance provisions of the NVRA with an eye towards protecting the integrity of the 2012 elections.  ECF No. 28 at 11-13.

## VII.   DOJ Should Not Oppose Permissive Intervention in a Case Involving Protected Interests Under Federal Voting Statutes

For all the foregoing reasons, Proposed Interveners should, at a minimum, be granted permissive intervention in this matter to present their common defenses with the state of Florida on the application of Section 8 of the NVRA.  *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984).  The Court has broad discretion to grant permissive intervention when an intervener's claim "contains a common question of law or fact and intervention will not hinder the adjudication of the original lawsuit."  *Fla. Wildlife Fed'n, Inc. v. Johnson*, 72 Fed. R. Serv. 3d 917, *9 (N.D. Fla. 2009).  In addition, Proposed Interveners must point out that DOJ typically allows interveners in cases such as this one where defined, federal statutory voting interests are at stake.  The current DOJ has routinely given its

19

consent to permissive intervention on the side of defendants in cases concerning voting rights, and historically that has been the norm.  In the recent litigation concerning changes to Florida's early voting laws, DOJ gave its consent to permissive intervention as defendants to five different organizations and several individuals.  *State of Florida v. United States of America and Eric H. Holder, Jr., in his official capacity*, Case No. 1:11-cv-01428, U.S. District Court for the District of Columbia (complaint filed July 29, 2011).  In that case, the DOJ consented to intervention by the League of Women Voters of Florida, the National Council of La Raza, Project Vote, Voting for America, and the Florida AFL-CIO, as well as to 23 individual voters – all of whom were granted intervention by the court.  *Id.*, Order (Oct. 19, 2011).

DOJ did not oppose permissive intervention for any of those groups or individuals, arguing that they had relevant knowledge of the issues at stake:  "As residents, registered voters, county supervisors of elections, and local organizations, Movant-Intervenors possess relevant knowledge and a "local perspective on the current and historical facts," that will arise in this litigation." *Id.*, Response of Eric Holder to Motions to Intervene (filed Sept. 13, 2011) (internal citation omitted).  DOJ further explained that intervention was routinely allowed in voting rights litigation, citing over 20 past voting rights cases where intervention was granted.  *Id.* at p. 4, fn 1.  Proposed Interveners both have

substantial expertise in the application of Section 8 of the NVRA, as well as local knowledge concerning the impact of DOJ's actions in Florida.  *See* Fitton Decl., Exh. 1 at ¶¶ 5, 7, 9-10, Engelbrecht Decl., Exh. 2 at ¶¶ 4-7, 10.

Similarly, in the litigation over Texas' recently-enacted Voter ID law, DOJ gave its consent to permissive intervention by nine (9) different organizations – including the Texas Legislative Black Caucus, the League of Women Voters of Texas, Justice Seekers, Southwest Voter Education, Mi Familia Vota Education Fund, Southwest Workers Union, Texas League of Young Voters, Texas State Conference of NAACP Branches, and the Mexican American Legislative Caucus – as well as several individual voters.  *State of Texas v. Eric H. Holder, Jr., in his official capacity*, U.S. District Court for the District of Columbia, Case No. 1:12-cv-00128 (complaint filed Jan. 24, 2012).  Certain of those organizations did not even move to intervene until over two months after the complaint had been filed, and were still allowed to join despite the fact that the proceedings had been expedited.  The logic DOJ applies to intervention in voting rights cases under 42 U.S.C. § 1973c should be applied equally to intervention in cases under 42 U.S.C. § 1973gg.[3]

---

[3] Proposed Interveners are concerned that DOJ's positions on intervention appear to shift depending on which groups of voters' rights are at risk.  DOJ appears to believe that those who are at risk of having their right to vote burdened have sufficient protectable interests, while those at risk of disenfranchisement by having their vote cancelled out by an unlawful ballot do not.  *See* ECF No. 39 at pp. 8-9,

**Conclusion**

For the forgoing reasons, Proposed Interveners respectfully ask that this

Court grant the Motion for Intervention.

---

11.  Proposed Interveners believe that voter disenfranchisement is voter
disenfranchisement no matter who it affects.

Dated:  July 20, 2012                Respectfully submitted,

                                 *Chris Fedeli*                  
Paul J. Orfanedes
*Petition for Admission* to Be Filed
Chris Fedeli
*Admitted,* N.D. Florida

JUDICIAL WATCH, INC.
425 Third Street S.W., Ste. 800
Washington, DC 20024
Tel: (202) 646-5172
Fax: (202) 646-5199
Email:  porfanedes@judicialwatch.org
             cfedeli@judicialwatch.org

*/s/  Christopher B. Lunny*
Christopher B. Lunny
Fla. Bar No. 0008982
Harry O. Thomas
Fla. Bar No. 195097
RADEY THOMAS YON & CLARK
301 South Bronough Street, Suite 200
Tallahassee, FL 32301
Tel: (850) 425-6654
Fax: (850) 425-6694
Email:  clunny@radeylaw.com
             hthomas@radeylaw.com

*Attorneys for Proposed Interveners*

*Of Counsel:*

J. Christian Adams
Election Law Center, PLLC
300 N. Washington Street, Ste. 405
Alexandria, VA 22314

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2012, a true and correct copy of the foregoing was filed with the Clerk of Court via the CM/ECF system, causing a Notice of Electronic Filing to be sent to all counsel of record.

*/s/  Christopher B. Lunny*
Christopher B. Lunny
