IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIV. NO. 4:12-CV-00285-RH-CAS |
| STATE OF FLORIDA; KEN DETZNER, Secretary of State, in his official capacity. | ) ) ) | |
| Defendants. | ) ) ) ) | |

## REPORT OF RULE 26 INITIAL CONFERENCE

Pursuant to Rule 26(f), Federal Rules of Civil Procedures, and paragraph (2)(a) of the Court's Initial Scheduling Order dated June 21, 2012 (ECF No. 20) ("June 21 Order"), the parties' initial planning meeting was held on July 18, 2012. By mutual agreement, the parties continued the July 18 meeting to July 26, 2012, for the purpose of exploring the possibility of settling this case. The parties are open to discussing settlement further, but in the interests of complying with the Court's Scheduling Order, the parties respectfully submit this Joint Status Report addressing the matters identified in the Court's June 21 Order as follows:

### POSITION OF THE UNITED STATES

1. ***Magistrate Jurisdiction:*** The United States proposes proceeding before the district court judge in this case.

2. ***Nature and Basis of Claims:***

a. Plaintiff United States alleges that the voter verification program initiated by Florida, which compares information in the Florida Department of Highway Safety and Motor

1

Vehicles ("DHSMV") database to the list of registered voters in the Florida Voter Registration

System ("FVRS"), violates Section 8(c)(2)(A) of the National Voter Registration Act

("NVRA"). 42 U.S.C. § 1973gg-6(c)(2)(A), which requires jurisdictions to complete systematic

removal programs of ineligible voters not later than 90 days before a federal election. *See*

Complaint ¶ 25 (ECF No. 2). Plaintiff's complaint further alleges that Florida's voter

verification program based on its database matching procedures, is inaccurate and unreliable, in

violation of Section 8(b)(1) of the NVRA, which requires that any such program be, *inter alia,*

"uniform [and] nondiscriminatory." 42 U.S.C. § 1973gg-6(b)(1); Complaint ¶ 26 (ECF No. 2).

Because voters have been removed by this program, the United States argues that this matter is

not moot, despite the State's representation that it has ceased this program.

      b.     Principal factual and legal issues in dispute:

      (1)     Whether Defendants' voter verification database matching program

violates Section 8(c)(2)(A) of the National Voters Registration Act ("NVRA"), 42 U.S.C. §

1973gg-6(c)(2)(A), which requires jurisdictions to complete systematic removal programs of

ineligible voters not later than 90 days before a federal election.

      (2)     Whether Defendants' voter verification database matching program

violates Section 8(b)(1) of the NVRA, which requires that any such programs be "uniform,

nondiscriminatory, and in compliance with the Voting Rights Act of 1965[.]" 42 U.S.C. §

1973gg-6(b)(1);

      (3)     All other issues raised in the Plaintiff's Complaint and the Defendants'

Answers and Affirmative Defenses.

      (4)     The United States avers that current, eligible registered voters have been

affected by the challenged data matching procedures notwithstanding Florida's asserted

discontinuation of these procedures. *See* Court Order dated June 27, 2012, 2012 WL 2457506 at

* 4 (denying United States' Motion for Temporary Restraining Order, because the Secretary "has

unequivocally said he will not continue [the voter verification program]."). Therefore, the

United States anticipates discovery will primarily address issues relating to the registered voters

affected by State's data matching program, including but not limited to those registered voters

who have been removed as a result of the program.

    2.    ***Settlement and Mediation:***  The parties have engaged in preliminary discussions

in an effort to resolve this matter.   The United States believes that resolution of this case is

possible, but that it requires prompt disclosure by the State of the State-generated list(s) of

potential non-citizen registrants (generated as a result of its discontinued voter verification

program), and in particular the names of voters removed from the voter rolls as a result of this

program, as well as the reasons for their removal.   To date, the State has not provided the United

States with this information.[1]   Accordingly, as set forth below, the United States proposes that

Florida disclose such information on or before ***August 8, 2012,*** in order to facilitate further

settlement discussions in this case.

    3.    ***Joinder, Amendments, Deadlines.***   The parties will file any joinder and amended

pleadings by ***August 30, 2012.***

    4.    ***26(f)(3) Discovery Plan***. Based on the parties' Rule 26(f) conferences held on

July 18 and July 26, and in light of the particular facts and legal issues raised in this case as well

---

[1]  On July 30, 2012, the United States issued third-party subpoenas for documents on nine
Florida Supervisors of Elections. These subpoenas seek information related to both the list(s) the
counties received from Florida which identified current registered voters as potential non-
citizens, as well as the lists of and information related to registered voters who were removed as
a result of the State's database matching program. The State is in possession of a complete list
of the names identified by the database matching program, however, and would also have
knowledge of the complete list of voters who have been removed from the statewide voter
registration list as a result of this program.

as the current procedural posture of the case, the United States proposes the following alternative

proposed discovery plan:

       a.      The United States proposes a discovery deadline of ***October 19, 2012***.  All

discovery shall be served in time to afford the completion of discovery by this deadline.

       b.      The United States does not presently anticipate any particular issues

regarding the discovery of electronically stored information ("ESI").

       (1)      The United States proposes that the parties produce data

reasonably available in the ordinary course of business.

       (2)      The United States proposes that the parties exchange documents

and information in the following format:  Documents and ESI that can be

accurately represented in black and white shall be scanned or converted to single

page Tagged Image File Format ("TIFF" or ".tiff format") files, using CCITT

Group IV compression.  All images shall be scanned or converted at 300 d.p.i.

and reflect, without visual degradation, the full and complete information

contained on the original document.  Photographs, color brochures, or other like

documents that cannot be accurately represented in black and white or documents

that are primarily in color shall be scanned or converted to JPEG files using a

high quality setting.  The parties will honor reasonable requests for either the

production of the original document for inspection and copying or production of

any color image of the document, thing, or ESI.

       (3)      The United States proposes that the parties negotiate and enter into

a Stipulated Protective Order to address issues related to confidential, sensitive

and/or otherwise private information.  The Stipulated Protective Order will be negotiated and agreed upon by the parties and submitted to the Court.

       c.      The United States proposes that the work product of parties' counsel, and attorney-client communications (such as correspondence directly to or from counsel), shall not require logging on the parties' respective privilege logs; and that for purposes of the privilege log, the parties may list categories of documents protected by the deliberative process privilege, rather than individual documents.

       d.      The total number of interrogatories, production requests, and requests for admissions from one party to another party shall not exceed twenty-five (25) respectively, without leave of court or as otherwise agreed by the parties, and all responses thereto shall be made within twenty-five (25) days of service.  The total number of depositions allowed by any one party shall not exceed fifteen (15), without leave of court or as otherwise agreed by the parties.  The total number of hours per deposition shall not exceed seven (7) hours, and no deposition shall proceed beyond 6:00 p.m., unless by prior agreement of all the parties or leave of Court.

       e.      The United States proposes that each party shall supplement as soon as possible after learning of additional information pertaining to the subject matter of the disclosure or original discovery request.

5.      ***Disclosure of the State's list(s) of approximately 2,600 voters:  August 8, 2012,*** The United States respectfully proposes that the State of Florida disclose all list(s) of registered voters that were (1) generated as a result of the data matching procedures described in paragraph 2(a) that identified current registered voters as potential non-citizens; and (2) distributed to Florida County Supervisors of Elections for purposes of determining eligibility and removal

based on potential non-citizen status. The United States further proposes that on the same date, the State of Florida disclose the complete list of voters who have been removed from the statewide voter registration system as a result of the State's database matching program.

6.     *26(a)(1) Pre-Discovery Disclosures*. The parties will exchange the information required by Rule 26(a)(1), Federal Rules of Civil Procedure by *August 15, 2012.*

7.     *26(a)(2) Expert Disclosures.* The Rule 26(a)(2) disclosures of the United States' and Defendants' expert witnesses and their opinions shall be made according to the following schedule:

> *September 14, 2012: Plaintiff's and Defendants' Expert Disclosures*
>
> *October 5, 2012:     Plaintiff's and Defendants' Expert Rebuttal Disclosures*

The United States proposes that written communications and drafts, including draft reports, in whatever form, protected by Rule 26(b)(4), Federal Rules of Civil Procedure, need not be logged on the parties' respective privilege logs.

8.     *Post-discovery Status Conference: following the November 6, 2012 elections.*

After the close of discovery in this case and following the November 6, 2012 election, the United States respectfully proposes that this Court hold a Rule 16 telephonic status conference within two weeks following  the November 6, 2012 election. The purpose of the conference is to (1) inform the Court of the status of the proceedings following discovery; and (2) provide the Court with any updates regarding the possibility of post-discovery resolution of the case either through the submission of cross motions for summary judgment or settlement. The parties will file a Joint Status report five days before of the Status Conference. Because both Florida and the United States will be involved in preparations for the November 6, 2012 election, the United States proposes that this conference be held after the general election.

At any time during the discovery period, if the United States identifies any eligible voter inappropriately removed from the rolls, the United States will work with the State to reinstate that voter, and if the parties cannot agree on the reinstatement of that voter, the United States may seek appropriate relief regarding reinstatement of that voter, as well as the evidence supporting that relief.

9.   *Other items:*

a.    The United States is amenable to a status conference before the entry of the Court's next scheduling order.

b.    Pursuant to paragraph 3(c) of the Court's June 21 Order, the United States respectfully requests the Court to enter an amended Rule 26 Initial Scheduling Order to reflect the revised deadlines proposed by the United States as set forth in this Joint Status Report.

c.    Except as proposed above, all other provisions of the Court's Initial Scheduling Order should remain in effect.

d.    This is not a case which should be made subject to the Manual for Complex Litigation.

e.    Regarding a trial date, the United States proposes that the Court set a schedule for further proceedings after the close of fact discovery and after the proposed November 2012 status conference.

## DEFENDANTS' POSITION

The United States has proposed an elaborate discovery schedule that would stretch until at least October 2012, would include up to 15 depositions and 9 third-party subpoenas, and

would "not [be] limited [in scope] to those registered voters who have been removed as a result

of the program [challenged in this case]." Plaintiff's Statement at 3, 5.

Such complex and protracted discovery is entirely unwarranted given the narrow and

easily resolved issue remaining in this case. As described in this Court's ruling of June 28, 2012,

the United States claims for *prospective* relief fail as a matter of law. There is thus no basis for

discovery regarding the need for prospective relief. Moreover, the United States has identified

no injury to, and seeks no remedy on behalf of, individuals who received a notice of potential

ineligibility but were not removed from the rolls. And the United States surely does not contend

that any non-citizens who were *properly* removed should be restored to the voter registry.

Accordingly, it is indisputable, and seemingly undisputed, *see* Plaintiff's Statement at 3, that the

only remaining issue in this case is whether the United States may obtain retrospective relief

regarding any registered voters who were wrongfully removed from the voter registration rolls

based on the Secretary's provision of MDAVE data to county Supervisors of Elections in April

2012.

The narrow question of whether any eligible voters were removed based on the

Secretary's provision of MDAVE data in April can be resolved far more quickly and simply than

the United States proposes. After months of improper delay, the Department of Homeland

Security ("DHS") committed on July 9, 2012, to grant the Secretary access to its Security

Systematic Alien Verification for Entitlements Database (SAVE). The Secretary and DHS are

finalizing the terms of a Memorandum of Agreement (MOA) governing such access. Since the

State of Florida wants to verify that properly registered voters were not removed from the rolls,

the Secretary will promptly use the SAVE database to check whether any of the voters removed

from the rolls pursuant to the process challenged in this case were, in fact, citizens. In the event

that any eligible voters were wrongfully removed, the Secretary will ensure that they are immediately restored to the rolls and notified that any prior notice of ineligibility was in error. The Secretary expects that his office will complete its cross-check of removed voters in no more than seven days after access is granted. The Secretary will promptly provide a report to the Justice Department explaining the verification process and its results.

Although the United States implies that Florida has delayed in providing it with information regarding the removed voters, any delay has in fact been caused by the United States. While DHS agreed to provide the Secretary with access to SAVE on July 9, 2012, and while the Secretary completed the SAVE Application Process by submitting all required information to DHS on July 12 and 13, 2012, DHS did not provide the Secretary with a draft MOA until July 26. The draft MOA, moreover, will require small but important clarifications to allow Florida to can effectively use SAVE data to verify the eligibility of registered voters. Nonetheless, Defendants believe that DHS will be granted access to the SAVE database by August 10, 2012, if not sooner.

Once the Secretary's cross-check has been completed, the United States' claims in this suit will have been entirely resolved, and there will be no basis for further discovery. Accordingly, Defendants respectfully request that this Court not adopt the United States' burdensome discovery schedule, at least not until the Secretary has completed the review described above and the United States offers some explanation of why further proceedings in this action are warranted.

9

## UNITED STATES' RESPONSE TO DEFENDANTS' POSITION

The United States disagrees with the Defendants' characterization of this case and the Court's June 28, 2012 order. *See* June 28, 2012 Order at pp. 9-10 (finding that the State's program "identified many properly registered citizens as potential noncitizens" and "was likely to have a discriminatory impact on these new citizens"). At the hearing on the temporary restraining order, the Court made clear that the case would proceed. The United States has not had the benefit of any discovery so far regarding eligible citizens who have been affected by the State's unreliable and erroneous database matching process. Eligible citizens may have been wrongly removed from the rolls based on this problematic database matching process. Likewise, eligible citizens who received mailings questioning their citizenship based on this same database matching process have been injured and may be confused about their ability to cast a ballot in upcoming elections, and the Court recognized this harm. *See id.* at p. 10 ("And while the Secretary suggests that having to respond to this kind of inquiry is of little import, that is not so. A state cannot properly impose burdensome demands in a discriminatory manner."). Finally, if the State reaches an agreement with the Department of Homeland Security on access to the SAVE Program, that development would not address or identify voters who were removed from the rolls simply for failing to respond to a mailing sent as part of the now-abandoned purge program. Nor has the State identified how many of the individuals on its list of 2600 potential noncitizens are individuals that can actually be processed through SAVE with the information (including alien registration numbers and supporting documentation) that would be required by DHS procedures. This means the State would <u>not</u> be able to use SAVE, as it claims it will do, to "check whether any of the voters removed from the rolls pursuant to the process challenged in this case were, in fact, citizens." As Florida is or should be aware, the SAVE Program is not a

universal citizen database; many individuals, including natural-born citizens, are not included in

SAVE.

Date: August 1, 2012                              Respectfully submitted,

PAMELA C. MARSH                                   THOMAS E. PEREZ
United States Attorney                            Assistant Attorney General
                                                  Civil Rights Division

                                                  */s/ Elise Sandra Shore*
                                                  _____

MICHAEL HARWIN                                    T. CHRISTIAN HERREN, JR
Georgia Bar Number 335605                         JOHN ALBERT RUSS IV
Assistant United States Attorney                  ELISE SANDRA SHORE
111 North Adams Street, 4th Floor                 JENIGH J. GARRETT
Tallahassee, Florida 32301                        Attorneys, Voting Section
Tel: (850)942-8483                                Civil Rights Division
Fax: (850) 942-8448                               United States Department of Justice
                                                  950 Pennsylvania Ave. NW
                                                  Room NWB-7254
                                                  Washington, D.C. 20530
                                                  Tel:  (202) 305-0070
                                                  Fax:  (202) 307-3961
                                                  United States Department of Justice

                                                  ***For Plaintiff United States***

*/s/ Daniel E. Nordby*                            */s/ Michael A. Carvin*
_____                       _____
DANIEL E. NORDBY (FBN 14588)                      MICHAEL A. CARVIN
General Counsel                                   GREGORY KATSAS
ASHLEY E. DAVIS (FBN 48032)                       WARREN POSTMAN
Assistant General Counsel

Florida Department of State                       Jones Day
R.A. Gray Building                                51 Louisiana Ave., N.W.
500 South Bronough Street, Suite 100              Washington, D.C. 20001
Tel: (850) 245-6536                               Tel: (202) 897-3939
Fax: (850) 245-6127                               Fax: (202) 626-1700
Daniel.Nordby@DOS.MyFlorida.com                   macarvin@jonesday.com
Ashley.Davis@DOS.MyFlorida.com                    ggkatsas@jonesday.com
                                                  wpostman@jonesday.com

*Counsel for Defendants*                          *Counsel for Secretary of State Detzner*